## CAPLE ET AL. *vs.* McCOLLUM.

[BILL IN EQUITY TO ESTABLISH RESULTING TRUST.]

1. *Uncertainty in immaterial allegations no ground of demurrer.*—Where the substantial allegations of the bill, if proved, would establish a resulting trust in favor of the complainant, independent of the agreement under which the money is alleged to have been paid, uncertainty in the terms of the alleged agreement is immaterial, and constitutes no ground of demurrer.

2. *Resulting trust established against purchaser at sheriff's sale in favor of defendant in execution.*—The evidence in this case showed these facts: Complainant's land

was sold under execution, and bought in by defendant at about one-sixth of its real value. At the time of the sale, defendant declared to several persons that he was buying in the land for complainant, and requested them not to bid for it; and after the sale, on several occasions, he declared that he had bought it in for complainant, and that complainant was to have it if he repaid the money by the next term of the court. Within a month after the sale, when defendant had paid nothing on the execution, complainant had an interview with him, went with him to the sheriff's office, and there counted out and paid, in his presence, the amount of his bid; which was thereupon credited on the execution: *Held*, that these facts made out a clear case of resulting trust.

5. *Statute of frauds does not apply to resulting trusts.*—The statute of frauds has no application to trusts created by operation of law alone, which may always be established by parol, except where some rule of evidence prevents it. *or where it contradicts a written instrument.*

APPEAL from the Chancery Court of Fayette.

Heard before the Hon. E. D. TOWNES.

THIS bill was filed by James K. McCollum, the appellee, against Samuel Caple, George M. Hubbert, Raza H. Poe, and Samuel B. Abernathy, and contained, in substance, the following allegations: That certain judgments were rendered against complainant, in 1840, on which executions were issued and levied on his lands by defendant Hubbert, who was then sheriff of Fayette county; that Hubbert's term of office expired soon afterwards, and said executions were by him handed over to his successor, said Poe, who struck out the date and Hubbert's name, and inserted his own name and the date on which they came to his hands; that said lands were exposed to sale by said Poe, as sheriff, in October, 1840, and were bid off by said Samuel Caple for the sum of $510, under the following agreement with complainant: "It was well known to said Caple that complainant was abundantly able to pay said judgments, independently of his aforesaid lands, which were worth at least $5,000; and complainant had assured said Caple, that he would be able, in a few days, to raise the money necessary to pay the balance due on said executions, and that ill-health alone had prevented him from then being able to do so. In view of these considerations, said Caple agreed with complainant to bid off said lands for complainant's benefit, and to hold them simply in trust for him; that if said executions should be paid by complainant, without the necessity on the part of Caple of paying or ad-

vancing for him the amount bid, he would not even take a deed for the land, but would, if necessary, make such release of them to complainant as might be required to continue the title thereto in him; also, that he would, in any event, act as complainant's friend in the premises, and reconvey or release said lands to him, upon a return of such amount as he might be required to pay of the sum to be bid for said lands."

The bill further alleges, that said Caple, at the time of said execution sale, publicly declared that he was buying in said lands for complainant, under said agreement, and thereby prevented many persons from bidding, and the lands were knocked off to him at $510; that within a few days after the said sale, and before Caple had paid anything on his bid, complainant procured the money, called upon Caple with it, declaring his readiness to pay the amount of his bid, and proceeded with him to the sheriff's office, where they found Poe and many other persons present; that complainant then and there counted out $510, and handed it to Caple, who paid it over to said Poe, by whom it was credited on said executions, together with a further payment of $200 then made by complainant; that the entire amount due on said executions was paid by complainant, and no portion whatever was paid by Caple; that afterwards said Poe, confederating with said Caple and Hubbert to defraud complainant of his said lands, and under an agreement to divide them among themselves, executed a deed, as sheriff, conveying said lands to said Caple and Hubbert, who thereupon commenced an action of trespass to try titles for their recovery, and have succeeded in recovering a judgment against complainant; that said Poe has transferred his interest in the lands to the defendant Abernathy. The prayer of the bill is, that said judgment at law may be enjoined, and that defendants may be decreed to hold said lands as trustees for complainant.

The defendants filed a joint answer, in which they deny the existence of any such agreement as charged in the bill, or of any agreement whatever, between complainant and said Caple in reference to the purchase of said lands at the execution sale; insist that the purchase was made in good faith, by Caple and Hubbert jointly; admit that Caple, after the land had been knocked off to them, told complainant that he

might have it back, if he would pay the amount of the bid and the balance due on the judgment, on which Caple was bound as surety, before the return day of the execution ; allege that complainant did not accept this proposition, and did not pay the balance due on said execution ; demur to the bill for want of equity ; and plead the statute of frauds.

It is unnecessary in this place to give an abstract of the evidence, the substance of which is stated in the opinion of the court. On final hearing, on bill, answer, and proof, the chancellor rendered a decree in favor of the complainant ; which is here assigned for error.

E. W. PECK, for the appellant, made these points :—

1. The demurrer to the bill should have been sustained, because of the uncertainty of the character of the alleged agreement. It cannot be determined from the allegations of the bill whether Caple was to release or re-convey to the complainant on the payment of the executions, or upon the re-payment of the sum bid at the sheriff's sale.—Story's Eq. Pleadings, § 255.

2. The alleged agreement is void under the statute of frauds.—Denton v. McKenzie, 1 Dess. Eq. R. 289, 297; Agee v. Steele, 8 Ala. 948; Lamborn v. Watson, 6 Har. & John. 252; Lamborn v. Moore, *ib*. 422; Schmidt v. Gatewood, 2 Rich. Equity R. 162, 178; Bander v. Snyder, 5 Barb. 63.

3. The proof made by complainant may incline the court to believe that an agreement of some sort existed between him and Caple ; but it cannot be determined from the evidence what that agreement was, or when it was made,— whether before or after the sheriff's sale. To entitle the complainant to a decree, he should have distinctly stated what the agreement was, and then proved it as stated. A variance, between the case made by the bill, and the proof, is fatal to his right to a decree.—Clements v. Kellogg, 1 Ala. 330 ; Goodwin v. Lyon, 4 Port. 297 ; Morgan v. Crabb, 3 *ib*. 470.

ORMOND & NICOLSON, *contra*, contended,—

1. That the defendants below, under the proof, were mere trustees for the complainant.—Roberts on Frauds, 97.

2. That the statute of frauds cannot be invoked by the defendants.—Jenkins v. Eldridge, 3 Story's R. 181; Andrews & Brothers v. Jones, 10 Ala. 420; Morris v. Nixon, 1 How. (U. S.) R. 118; 12 U. S. Digest, p. 316, § 16.

GOLDTHWAITE, J.—The first question presented on the record is, as to the action of the chancellor in overruling the demurrer to the bill ; the object of which was, to declare a parol trust upon lands, and, as an incident to that relief, to enjoin a judgment at law, which had been rendered in favor of the trustees against the *cestui que trust*. The bill charges, that the land of the complainant having been levied on by execution, the defendant Caple, knowing his ability to pay the same, and that he had only been prevented from doing so by sickness, agreed as a friend to bid off the land, and hold it in trust for him,—that he would take no deed, if the complainant was able to pay off the executions before the amount bid should be required of him by the sheriff ; and at all events, that he would re-convey to the complainant on the repayment of the amount bid by him. This part of the bill is selected for the operation of the demurrer ; and it is urged in this court, that it is impossible to say from these charges whether the agreement on the part of Caple was, to re-convey on the payment of the executions, or on the repayment of the amount bid by him. We do not consider it necessary to determine this question, for the reason, that whether we consider it in the one aspect or the other is entirely immaterial, as the bill also charges that the money was not paid by Caple, but was paid by the complainant before any deed was made, and that the amount due on the executions was paid off by him. Under these circumstances, it would, in principle, be the case of land bought and paid for by one person, and the title taken to another ; and a trust would then result to the person who paid the money.—Willis v. Willis, 2 Atk. 71; Bottsford v. Burr, 2 Johns. Ch. 405.

But independently of the facts to which we have referred, the equity of the bill is sustainable on other grounds. If the land was bid in by Caple, for the benefit of McCollum ; or, whether it was or not, if before the former paid the amount bid, and took the deed, he received the money from McCol-

30

lum, and recognized it as the money which was to be applied in payment for the land, and it was paid to the sheriff with that understanding, then, as the payment was in fact made by Mc-Collum, the trust would result to him, upon the principle to which we have already adverted. These facts are substantially charged by the bill, and, if made out by the evidence, would entitle the complainant to the relief asked, without reference to the other allegations. Because more is stated in the bill than may be necessary, will not prevent a party from obtaining relief.

Upon the evidence, we regard the case as a perfectly clear one. The land was sold on the 5th October, 1840. At the time of the sale, Caple declared, to more than one person, that he was buying the land for McCollum, and requested them not to bid; and after the sale, he declared, on several occasions, that he had made the purchase for McCollum, and that he was to have the land if he paid the money by court. The land was worth from three to four thousand dollars, and it was bid off by Caple at five hundred and ten dollars—scarcely one-sixth of its value. It is proved, too, that Caple had paid nothing up to the 27th of October; and that on that day, the complainant, after having a conference with Caple, went with him to the sheriff's office, and there, in his presence, counted out and paid to the sheriff the amount which Caple had bid for the land—five hundred and ten dollars—which was credited on the execution. If this payment was made in pursuance of an understanding between Caple and McCollum that it was to pay for the land bid off by the former, then the case is too plain for argument. The answers of the appellants, however, positively deny this, and assert that Caple objected to its being regarded or received as a payment for the land, and insisted that it should go as an independent payment on the execution; and that it was in fact so paid. We do not regard the answers of either Caple, Hubbert, or Poe, as entitled to any weight, for the reason, that the material facts stated by them are disproved by the evidence of several witnesses. It is, to say the least of it, singular, that if the objection was raised, not a single person of those present, who were not interested in the matter, has any recollection of it, and every one who was present and

has been examined in relation to what passed upon that occasion, states facts which are opposed to it ; and their evidence is corroborated and strengthened by the repeated admissions, subsequently made by both Caple and Hubbert, in effect, that the amount paid at that time was for the land. Indeed, Caple goes further than this, and announces his intention to swindle the appellee out of his land, making at the time a calculation of the profits which would result to him from the operation ; and Poe also admits that the claim, which he had been instrumental in setting up for the land, was an unjust one. True, there is some conflict of testimony ; and where the witnesses examined are as numerous as in the present case, it would be strange if there was not. But the main facts—that the land was bid off by Caple for the benefit of McCollum, and that the money of the latter paid for the purchase by him, are fully and clearly established. The testimony also establishes, that after the payment was made by McCollum, the appellants, Caple, Hubbert, and Poe, entered into a fraudulent combination, for the purpose of defrauding him out of his land. If they made the payment, which they allege in their answer, but which they have failed entirely to prove, it would place them in no better situation, as its object was to give color to a fraud.

In relation to the statute of frauds and perjuries, it is only necessary to observe, that it has no application to a trust arising by operation of law alone, which can always be established by parol, unless it is prevented by the rules of evidence ; as where it contradicts a written instrument.—Robert on Frauds, 99, 100; Boyd v. McLean, 1 Johns. Ch. R. 582 ; Willis v. Willis, 2 Atk. 71 ; German v. Gabbald, 3 Bin. 302.

The decree of the chancellor was correct, and must be affirmed at the costs of the appellants.