# Carithers *et al.* v. Lay's Administrator *et al.*

*Bill in Equity by Creditors of Deceased Insolvent Debtor, to subject Lands held under Implied Trust.*

1. *Cancellation of deed.* — Although the cancellation or destruction of a deed, after its delivery, does not annul it as a conveyance ; yet, where a sheriff's deed to a nominal purchaser, of lands sold under execution, is destroyed by him at the instance of the grantee and the person who furnished the purchase-money, and for whom the purchase was made, and another deed is executed to the latter, a court of equity will, in the absence of intervening equities in favor of third persons, treat the second deed as conveying the title.

[Carithers *v*. Lay's Administrator.]

2. *Resulting trust in lands declared against purchaser at execution sale.* — Where a purchaser at sheriff's sale verbally agreed with the defendant in execution, prior to the sale, to pay a specified price for one of the two tracts of land, and to apply the purchase-money in satisfaction of the judgments and other debts which might have liens on the lands, paying over the residue, if any, to the defendant himself; and, having bought both tracts at the sale, for a price much less than he had agreed to give for one, and paid the purchase-money as stipulated, he took possession of the tract which he had agreed to buy, but left the defendant in undisturbed possession of the other up to the time of his death, disclaiming any right to it in himself; *held*, that a court of equity would, on these facts, declare a resulting trust in favor of the defendant, or, on his death and insolvency, in favor of his creditors, in the tract of land so left in his possession, but would not hold the purchaser liable for the estimated value of certain trees on the other tract, which the defendant reserved by the contract, but which he never removed or demanded.

APPEAL from the Chancery Court of Etowah.

Heard before the Hon. B. B. McCRAW.

The original bill in this case was filed on the 1st May, 1862, in the chancery court of De Kalb county, and was transferred, by consent of parties, to Etowah county. The complainants were judgment creditors of A. J. Chaney, against whom one of the judgments was rendered in 1855, while the others were rendered against his administrator in 1858. The object of the bill was to reach and subject to the satisfaction of the complainants' judgments a tract of land, containing eighty acres, of which said Chaney was possessed at the time of his death, and which was afterwards claimed and occupied by William Lay, one of the defendants, who conveyed it by deed to his daughter, Mrs. Benson, and her children. The bill also sought to hold said Lay, and those claiming under him, responsible for the value of certain personal property, consisting of a cotton-gin and apparatus connected with the screw, which were on the land when he went into possession; and for the value of certain fruit trees, on another tract of land, of which said Lay was possessed before the filing of the bill, and to which the complainants asserted no claim. Lay derived title to both tracts of land under a purchase at sheriff's sale, under executions issued on several judgments against said A. J. Chaney; while the complainants sought to establish a resulting trust in one of the tracts of land, under a verbal contract between Chaney and Lay, entered into prior to the sheriff's sale, pursuant to which, as they claimed, Lay became the purchaser at that sale, and received the sheriff's deed. The terms of this contract, as established by the pleadings and proof, are stated in the opinion of the court, and need not be here repeated.

Although the bill was filed in 1862, the record does not show that any of the defendants were brought into court, or appeared, until after the close of the war. Lay was a non-resident when the bill was filed, and the cause was revived against his administrator and heirs-at-law in 1867. The record does not show the time when A. J. Chaney died, but the judgments

against his administrator were rendered in 1858. His personal representative, widow, and children were made defendants to the bill, but none of them set up any defence, though formal answers were put in by the guardian *ad litem* of the infants. Lay's administrator, who was the principal defendant, denied all knowledge of the facts alleged in the bill, and demanded proof of them; pleaded the statute of non-claim, the statute of limitations of ten years, and the statute of frauds; and demurred to the bill for want of equity, for misjoinder of parties, and because the complainants had an adequate remedy at law. On final hearing, on pleadings and proof, the chancellor dismissed the bill, on the ground that the contract between Lay and Chaney " was without consideration, and was not in writing; " and his decree is now assigned as error.

S. K. McSpadden, F. S. Rice, and Thos. B. Cooper, for appellants.

Foster & Forney, *contra.*

B. F. SAFFOLD, J. — The appellants, being creditors of A. J. Chaney, had recovered judgments severally against his administrator, except one of them, the Roswell Manufacturing Company, which obtained its judgment in 1855, during the lifetime of the decedent. The estate of Chaney was insolvent. The purpose of the bill, filed by the appellants as a creditors' bill, was to subject to the payment of these judgments certain real estate and personal property alleged to belong to the estate of Chaney, but to be in the possession of the appellee defendants, or some of them.

In 1854, Chaney had two tracts of land, called the " Creek tract," and the " Home place." He was considerably in debt, and was desirous of selling all, or a portion of these lands, in order to pay his creditors. Graves, a friend of his, negotiated a contract of sale with Lay, which, afterwards, he ratified. The agreement and manner of its execution were as follows: Lay was to purchase the " Creek tract," for $2,300, reserving to Chaney some fruit trees on it, which they considered to be worth about $300. He was to dispose of the purchase-money by paying certain debts of Chaney, some of which had been reduced to judgment, and returning any balance to Chaney. Lay and Graves, in the absence of Chaney, agreed that executions on the judgments, which were in the hands of the sheriff, should be levied on the lands, and a sale had under them, in order to secure a better title than Graves had authority from Chaney to make. Graves became the purchaser of all of the lands for $600, which he paid with money given him for the

[Carithers v. Lay's Administrator.]

purpose by Lay. The sheriff conveyed to Graves, and he being unwilling to execute more than a quitclaim deed to Lay, the latter preferred to have a deed direct from the sheriff. The two went to the sheriff together, and caused the deed to Graves to be destroyed, and another from the sheriff to Lay, as the purchaser, to be made. Lay, then, with the concurrence of Chaney, went into the possession of the "Creek tract," and so continued. Chaney retained possession of the "Home place," under an express, though verbal agreement with Lay, that the latter would make a deed of it to him, and receive from him a deed to the "Creek tract." Lay never paid any money for the "Home place." Chaney died not long afterwards, without the execution of the deeds so agreed to be made, and without having removed or claimed the fruit trees. After his death, Lay took possession of the "Home tract," and used and disposed of it as his own. He and his wife conveyed it for the benefit of their daughter, Mrs. Benson, and her children. Why he was suffered to do so by the family of Chaney is not shown. Perhaps, they thought his sheriff's deed precluded their right, and because the estate of Chaney was insolvent. Chaney's wife survived him, and several of his children were minors.

Notwithstanding the mere destruction of the deed from the sheriff to Graves did not nullify its effect as a conveyance (*Gimon* v. *Davis*, 36 Ala. 589), Lay will be treated, in equity, as the real owner of the "Creek tract." He furnished the money with which it was bought, entered into possession of it, and obtained a title thereto, with Graves's consent, which they both thought was sufficient. But he cannot be so regarded in respect to the "Home place." If it had not been for the agreement between him and Graves, representing Chaney, he would not have been permitted to purchase the two tracts for $600, when he was willing to give $2,300 for one of them. Chaney continued to possess this parcel to his death, under Lay's positive disclaimer of any right to it. He never paid anything for it, and there was no proposition that he should. Chaney, up to the date of his death, had the unquestionable right to have the deed to Graves, or to Lay, set aside in respect to this land. *Caple* v. *McCollum*, 27 Ala. 461.

At Chaney's death, his widow, and minor children, of which he left several, were entitled to a homestead out of this "Home place," under R. C. § 2061. Any excess over the quantity so appropriated would belong to his creditors. Whether Lay purchased from Chaney's family any right they had, is not disclosed in this case. The right of Mrs. Benson and her children may become plainer on further examination. The chancellor misconceived the law in the reasons given by him for

[Montgomery and West Point Railroad Co. *v.* Moore.]

dismissing the bill. There seems to be no ground for holding Lay's administrator liable for anything more than the " Home place." His title to the " Creek tract " is complete. He appears to have paid the price he agreed to give. At least, there is no evidence that he has not done so, and any claim against him on that account is probably barred. He is not a debtor for the fruit trees, because he has never undertaken to pay for them. His contract was to let Chaney take them away. In respect to the " Home place," we decide only that Lay, under the sheriff's sale and deeds, and his contract with Chaney, did not acquire any right to it against Chaney, his family, or his creditors. Further investigation is necessary to determine to whom it belongs.

The decree is reversed, and the cause remanded.