# Whisenant v. Gordon.*

*Bill in Equity to compel Specific Performance of Contract, and to enjoin Execution of a Judgment.*

1. *Re-delivery of deed does not reinvest title in grantor.*—Upon the execution and delivery of a deed conveying land to the grantee, the title becomes vested in such grantee, and the redelivery of the deed and its mutilation or destruction by the parties can not reinvest the estate in the grantor, or estop the grantee from claiming title under it.

2. *Specific performance; what necessary to justify decree.*—To justify a decree for the specific performance of a contract of sale or conveyance of land, the terms of the contract must be definitely alleged, and the evidence to establish it must be such as to produce a clear conviction of the existence and terms of the contract as alleged.

3. *Conveyance of land; must be in writing.*—Conveyances of land must be in writing, and their execution must be accomplished by formalities, the observance of which is calculated to remove all doubt or uncertainty as to the grantor's intention to divest himself of the title to the land conveyed.

* This case was first announced on January 27, 1892. The opinion in response to the application for rehearing was announced November 8, 1893

[Whisenant v. Gordon.]

4. *Statute of frauds; waiver as a defense to a bill for specific perform-* . *ance.*—The statute of frauds, as a defense to a bill for the specific performance of a contract, is waived unless specially pleaded; and the contract being admitted or satisfactorily proved, it will be enforced although it may be obnoxious to the statute.

5. *Parol agreement for conveyance of land; when specifically enforced.*— A parol agreement for the re-conveyance of land will be specifically enforced, at the suit of the vendee of the original vendor, when the circumstances surrounding the transaction, the conduct of the parties, and the declarations of the grantee in the original conveyance show that it was the intention of the parties to rescind the former sale and revest the title in the grantor.

APPEAL from the Chancery Court of Marshall.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on October 3, 1889, by the appellee, Bathsheba Gordon against George Whisenant; and prayed to have specifically enforced an alleged parol agreement, by the respondent for the re-conveyance of certain lands, and for an injunction restraining the execution of a judgment recovered in favor of the respondent against the complainant in an action of eject-ment. The facts of the case are sufficiently stated in the opinion. On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for. The respondent appeals, and assigns this decree as error.

JOHN G. WINSTON, JR., and THOS. H. WATTS, for ap-pellant.—The bill shows that the legal title to the land was in the respondent at the time the complainant pur-chased the land, and that she knew this fact. The mere re-delivery of the deed by the respondent to his mother, or even the cancellation of the deed, was not sufficient to re-invest the mother with the legal title to the land in controversy.—*Reavis v. Reavis,* 50 Ala. 60 ; *Carithers v. Lay,* 51 Ala. 390 ; *Smith v. Cockrell,* 66 Ala. 64 ; *Brady v. Huff,* 75 Ala. 80. The evidence does not show that there was any cancellation or destruction of the deed by the respondent. This must be shown before there could be even an equity in the original grantor, Mary Whisenant. The cancellation or destruction would not divest the legal title, but would confer an equity in the grantor when it was clearly the intention of the parties to thereby re-invest the grantor with title.—*Reavis v. Reavis,* 50 Ala.

[Whisenant v. Gordon.]

. 60. The parol contract of agreement expressed in the bill is not such a one as could be made in the manner shown, but it should have been in writing, which should also show that the rescission was by the mutual assent of the parties.—*Badders v. Davis*, 88 Ala. 369, 6 So. Rep. 834.

The respondent was not estopped from setting up his title obtained by deed from his mother, because he handed her back the said deed, and said that he would have nothing more to do with her or the land.—*Sullivan v. Conway*, 81 Ala. 153, 1 So. Rep. 647 ; *Jones v. Cowles*, 26 Ala. 515 ; *Ware v. Cowles*, 24 Ala. 449. The possession by the appellant of the lands through his tenant at the time of the purchase by appellee was notice of the claim or title of the appellant, and was notice that he still claimed the land notwithstanding the surrender of the deed to his mother.—*Brunson v. Brooks*, 68 Ala. 248 ; *Tutwiler v. Montgomery*, 73 Ala. 263.

R. C. BRICKELL, and BROWN, HOLLIDAY & STREET, *contra*. (1.) After a judgment has been rendered against a defendant in an ejectment suit, he can go into a court of equity to enjoin the enforcement of said judgment, when the grounds upon which he claims the right of cancellation of the deed of the plaintiff is of purely equitable cognizance, and would have constituted no defense to an action at law.—*Lehman v. Shook*, 69 Ala. 486 ; *Jones v. DeGraffenreid*, 60 Ala. 145 ; *Womack v. Powers*, 50 Ala. 5 ; *Howell v. Motes*, 54 Ala. 1 ; *Nelson v. Dunn*, 15 Ala. 502 ; *Greenlee v. Gains*, 13 Ala. 198 ; *Calloway v. McElroy*, 3 Ala. 406 ; 1 Brick. Dig., 666, §§ 376, 382 ; 3 Brick. Dig., 347, § 229 ; High on Injunctions, § 327. (2.) The defendant was estopped by his acts and silence, regardless of what his intention may have been.—*Forney v. Calhoun*, 36 Ala. 463 ; *Abram v. Seales*, 44 Ala. 297 ; *Allen v. Maury*, 66 Ala. 10 ; Tiedeman on Real Prop., § 741 ; 3 Washb. Real Prop., § 456. (3.) While the redelivery of the deed to Mrs. Whisenant and its cancellation, and her restoration to the possession did not reinvest in her the legal title, yet in equity this effect will be given to it.— *Carithers v. Lay*, 51 Ala. 390 ; *Reavis v. Reavis*, 50 Ala. 60 ; *Barrett v. Thorndike*, 1 Greenl. Rep. 78. (4.) Besides that of estoppel, there is another principle upon which the equity of this bill may be maintained. The surrender of the deed back to Mrs. Whisenant, its cancellation and her restoration to the possession, while it

did not revest the legal title in Mrs. Whisenant, it constituted a binding agreement to reconvey, which the complainant and her assignee or vendee has the right to specifically enforce. The surrender by Mrs. Whisenant of her right to a support by defendant constituted a sufficient consideration, and having been placed in possession, this took the transaction out of the operation of the statute of frauds and rendered it binding.—Code, § 1732; *Scott v. Griggs*, 49 Ala. 185; *McLure v. Tennille*, 89 Ala. 572, 8 So. Rep. 60. (5.) Besides, the defense of the statute of frauds was not presented either by plea, answer or demurrer; and hence, if it was the intention of the parties to the cancellation to revest title in the complainant's vendor, based upon the consideration of the surrender by her of her right to a support, the court will enforce this intention though the statute of frauds if properly presented might have constituted a full defense.—*Lewis v. Teal*, 82 Ala. 288, 2 So. Rep. 903; *Hughes v. Hatchett*, 55 Ala. 539; *Heflin v. Miller*, 69 Ala. 334; *Clark v. Taylor*, 68 Ala. 453; *Bolling v. Munchus*, 65 Ala. 558; *Phillips v. Adams*, 70 Ala. 373; *Bailey v. Irwin*, 72 Ala. 505; *Shakespeare v. Alba*, 76 Ala. 351.

WALKER, J.—The parties to this suit claim the land in dispute under different conveyances from Mrs. Mary Whisenant. In October, 1877, she conveyed the land by deed to the appellant, who is her son, In October, 1881, she executed another conveyance of the same land to Mrs. Gordon, the appellee. It is not alleged or claimed that the appellant ever reconveyed the legal title to his mother. The claim is that by a parol agreement between them, made prior to the execution of the conveyance to Mrs. Gordon, the deed to the appellant was cancelled, and by him surrendered to his mother, who was restored to the possession of the property. Mrs. Gordon acquired possession of the land under the deed to her, and remained in possession for several years, and until after the death of Mrs. Whisenant. The appellant having recovered a judgment against the appellee in a statutory action of ejectment for the land, the bill in this case was filed by the appellee to restrain the execution of the judgment in favor of the appellant, and to compel him to convey the legal title to the appellee.

The legal title which was vested in the appellant by

the execution and delivery of the conveyance to him has remained in him, as it could not be divested by the cancellation of that conveyance, and its redelivery to the grantor therein.—*Bailey's Adm'r. v. Campbell*, 82 Ala. 342, 2 South. Rep. 646 ; *Smith v. Cockrell*, 66 Ala. 64 ; *Kimball v. Greig*, 47 Ala. 230. The appellee insists that, though there has been no reconveyance of the legal title, yet there was a binding agreement for such reconveyance, under which Mrs. Whisenant was restored to possession of the land, and that this agreement should be specifically enforced in favor of the appellee as Mrs. Whisenant's vendee. The appellant denies that he consented to a cancellation of the conveyance to him, or that he agreed that the title to the land should be reinvested in his mother. There is no competent direct evidence of such consent or agreement. The most that can be said of the proof in support of the claim set up by the bill is that it establishes certain facts which point to the conclusion that the arrangement between Mrs. Whisenant and her son, which was evidenced by her deed to him, was not fully carried out, but was abandoned. The deed to the appellant recites as a consideration the payment by him of the sum of one dollar, and also the further consideration that he is to take care of the grantor, and furnish her house room, board, lodging, clothing, and medical attention when necessary during her lifetime. It appears from the evidence that Mrs. Whisenant removed from the land in dispute to the residence of the appellant about the time of the execution of her deed to him ; that she lived with him between two and three years, when she left his residence, and thereafter lived elsewhere ; that he redelivered the deed to her, and she had possession of it at the time of her execution of the conveyance to the appellee, when she delivered it to the latter ; that after the appellant redelivered his deed to his mother, and she left his residence, he contributed but little towards her support ; and that, with knowledge of the deed to the appellee, he permitted the latter to obtain and keep undisturbed possession of the land until after his mother's death. The facts here referred to indicate that Mrs. Whisenant did not continue to receive from the appellant the care and support stipulated for in her deed to him, and that when he ceased to furnish her a home, and after she made a deed of the same land to another

person, he abandoned possession of the land until after
her death. One witness, who appears from his own state-
ment not to be on friendly terms with the appellant, tes-
tifies to conversations in which the appellant said that
he had returned the deed to his mother; that he was
tired of her; that she was troublesome, and he would
not be bothered with her for two such places; that he
gave her back the deed, as she was wanting the land
back to sell it or to make a support out of it herself.
Another witness testified: "I have heard him [the de-
fendant] say that he was not going to cultivate the land;
that he had given her up the deed, and that he was not
going to have anything more to do with it; and said
also that he thought he had to pay for all he did for her;
that she was troublesome and aggravating, and that
he would never have anything more to do with her * *
The defendant told me he had given back to his mother
the deed because she was so much trouble that he did
not want to be bothered with her. He stated to me that
he intended never to have anything more to do with her
or the land, and also stated that he would not be bothered
with her for two such places, and that she might live five
or six years longer, and that it would be worth more than
the land to care for her if she did live that long. He
thought he had about got pay for all he had done for
her." Doubt is cast upon this testimony by the ap-
pellant's explicit denial that he had any such conversa-
tion, and by the testimony of several other witnesses to
the effect that when this witness was examined in an
unlawful detainer case between the same parties he gave
a materially different version of the statements made by
appellant to him.

The evidence above referred to is what must be relied
on to support the conclusion that when the appellant
handed his deed back to his mother he abandoned his
claim to the land, and that it was understood between
them that she should be the owner of the land from that
time. But there are several considerations in the way
of accepting this conclusion with any confidence in its
correctness. In the first place, even after rejecting a
mass of incompetent evidence on both sides, we are still
confronted with irreconcilable conflicts at every material
point throughout the testimony. Furthermore, it ap-
pears that the appellant did not give up the land when

he handed his deed back to his mother, but retained possession of it by his tenant for a considerable time thereafter. There is no competent evidence to show that he knew of or consented to the mutilation of his deed by tearing off the signature and acknowledgement. There is evidence tending to show that before the conveyance was made to the appellee a message was sent to her by the appellant, warning her that if she bought the land from his mother she would buy a lawsuit; and it is plain that the appellee was informed of the prior conveyance to the appellant, and yet refrained from making any inquiry of him as to his alleged relinquishment of his claim; and also that she paid less than one-third of the value of the land, which is a circumstance tending to show that there was doubt as to the ability of the seller to convey a good title, and that it was not clearly understood that the appellant had abandoned his claim. The result of the examination of the record is that we find that the appellee relies upon an alleged agreement by the appellant that his mother should again become the owner of the land; that there is an entire absence of direct evidence of the terms of the alleged agreement or of the consideration to support it, and that the conclusion that there was any such agreement at all can be reached only by relying upon doubtful inferences from circumstances not established by clear and satisfactory proof. It can not be said that it plainly appears from the evidence that the appellant's act in handing his deed back to his mother, and her act in removing from her son's residence, were done in the performance of a definite agreement between them that the son should cease to be the owner of the property which had been conveyed to him, and that the mother should be restored to the ownership. The utmost effect that can be given to the evidence as to the conduct of the mother and son is to concede that it suggests the probability that there was some such understanding between them. It was not incumbent on the appellee to show that in the making of the alleged agreement by the appellant to reinvest his mother with the title the requirements of the statute of frauds were conformed to. Any objection because of such non-conformity was waived by the failure to interpose a defense on that ground, either by demurrer or answer. *Shakespeare v. Alba*, 76 Ala. 351. But the failure to

plead the statute of frauds did not relieve the appellee of the duty of furnishing the full measure of proof which is required to justify a decree for the specific enforcement of a contract for the sale or conveyance of land. The terms of the contract must be definitely alleged, and established as alleged by clear and satisfactory proof. If the evidence fails to prove the contract, or any of its terms are left in doubt or uncertainty, a specific performance will be refused. Courts will not, in such cases, grope their way on inconclusive probabilities, or grant relief on merely persuasive testimony. The evidence must be such as to produce a clear conviction of the existence and terms of the contract as alleged.—*Carlisle v. Carlisle*, 77 Ala. 339; *Derrick v. Monette*, 73 Ala. 75; *Pike v. Pettus*, 71 Ala. 98; *Daniel v. Collins*, 57 Ala. 625; *Aday v. Echols*, 18 Ala. 353; *Bogan v. Daughdrill*, 51 Ala. 312. Conveyances for the alienation of land are required to be in writing, and their execution must be accompanied by formalities, the observance of which is calculated to remove all uncertainty as to the grantor's intention to divest himself of the title. The provision of the statute on this subject would fail in its purpose to prevent the divestiture of title to land by any act of equivocal meaning, if the landowner could be charged with the duty to convey by evidence which leaves it in doubt or uncertainty whether or not he intended to bind himself by a contract to part with his title. The testimony in this case is so conflicting, and the claim that the appellant agreed that his mother should be reinvested with the title to the property in dispute is so dependent upon inferences from circumstances of doubtful import, that the evidence can not be regarded as so clearly establishing an agreement for a conveyance as to justify a decree for its specific enforcement.

The appellee does not occupy the position of a *bona fide* purchaser without notice of the prior conveyance to the appellant, for, though that conveyance had not been recorded, yet it is plain from the evidence that the appellee was informed of its existence when the deed of later date was made to her. There is no evidence to show that the appellee in making her purchase was influenced by any representation or admission made by the appellant, or that she acted on any assurance from him that he no longer claimed the property. There is

nothing upon which the appellee can rest a claim that the appellant estopped himself from asserting against her the title vested in him by the prior conveyance, unless such estoppel resulted from his act in redelivering that conveyance to his grantor, who thereafter undertook to convey the same land to the appellee. It is plain, as has been already stated, that the redelivery of the deed, and its destruction by the parties, are ineffectual to revest the estate in the grantor. It was not decided in *Reavis v. Reavis*, 50 Ala. 60, or in *Carithers v. Lay*, 51 Ala. 390, that the mere cancellation of a deed could operate as a divestiture of the title of the grantor therein, or to preclude him from asserting his title. Those cases merely recognize the equitable title of the real purchaser of land who had paid the purchase money and taken possessession with the full consent of the person who was the grantee in the conveyance which had been destroyed. It was not held in either of those cases that the consent of the grantee to the cancellation of his deed would estop him from claiming title under it. But it has been held by some courts that a grantee may estop himself from claiming title under his unrecorded deed by consenting to its cancellation, or by redelivering it to his grantor with the intention that the latter should reacquire the property.—*Farrar v. Farrar*, 4 N. H. 191; *Trull v. Skinner*, 17 Pick. 213; 1 Devl. Deeds, § 302. The text writer just cited says : "These decisions, however, are confined to but a few States, and it is obvious that they must, in a measure, conflict with the provisions of the statute of frauds. If the rule that the cancellation of a deed or its redelivery to the grantor would operate to revest the title were adopted, it would permit the perpetration of the frauds which it was the design of the statute to prevent. The deed might be redelivered to the grantor for many other purposes than a transfer of the title. As in the cases cited in the following section, the deed might be returned for the purpose of correction or acknowledgment. Resort would have to be had to parol evidence in case of controversy, to determine the intention with which the redelivery was made. These decisions have frequently been referred to in other States, but always with disapproval. And, as said by Mr. Justice Compton, in a case in Arkansas, (*Strawn v. Norris*, 21 Ark. 80, 82) , 'It would not be easy to maintain

the soundness of these decisions upon principle.' " 1 Devlin on Deeds, § 305. The contention in this case illustrates the unsatisfactory operation of such a rule of estoppel. Here only the bare fact of redelivery is clearly shown. That act was of equivocal import. It did not necessarily indicate that the grantor intended to give up the property. We now find the deed in a mutilated condition, but the evidence does not show that the grantor consented to the mutilation, or treated that act as a cancellation of the conveyance. We have only the testimony of the witnesses to look to for information as to the circumstances attending the redelivery and mutilation of the instrument, and as to the acts and expressions of the parties indicating the presence or absence of an intention that the grantor should be restored to the ownership of the property. The mere act of redelivering the deed was without effect upon the title. The accompanying agreement of the parties, and not the mere act of redelivery, is the feature of the transaction which must be relied upon as the basis of an estoppel. That agreement rests wholly in parol. As an agreement it is without effect upon the title to the land. The effort is to give it the same effect, by way of an estoppel upon the grantee to assert his legal title, as it would have had if it had been reduced to writing, and signed by the parties. If such a rule of estoppel is recognized, the result is that a change in the beneficial ownership of land may be effected by a mere parol agreement, proved only by the testimony of witnesses. We can not recognize a rule of estoppel which would offer such temptations for fraudulent evasions of the requirements of the law upon the subject of conveyances for the alienation of land. We may add, in this connection, that the impression made upon us by the testimony of the appellee is that she acted on the erroneous supposition that the effect of the prior unrecorded conveyance was destroyed by the mere acts of redelivery and mutilation, rather than that she was misled, in making the purchase of the land, by any declaration or conduct of the appellant indicating his disavowal of all claim to the property. She was simply mistaken as to the law when she supposed that the appellant was bound by a transaction which in reality had no legal effect. Certainly it does not satisfactorily appear that she was induced to make the pur-

chase by anything said or done by the appellant, and for this additional reason she is not in a position to claim that he has estopped himself from asserting his legal title.—*Morris v. Alston*, 92 Ala. 502, 9 South Rep. 315; *Leinkauff v. Munter*, 76 Ala. 194.

It is unnecessary to review the ruling made on the demurrer to the bill. Any want of proper allegations in the bill might be cured by amendment. Conceding the sufficiency of the bill, yet the evidence adduced does not warrant the granting of the relief prayed upon either of the grounds, that the defendant had made a valid agreement to reconvey the land in dispute to the complainant's grantor, or that the defendant is estopped from asserting against the complainant the legal title vested in him by the prior conveyance. For the reason that the complainant's claim is not supported by sufficient evidence, the decree of the chancery court is reversed, and a decree will be here rendered dismissing the bill.

## On Rehearing.

McCLELLAN, J.—Upon a further examination of the evidence in this cause we have reached the conclusion that it was the intention of George E. Whisenant and his mother, Mary Whisenant, and their contract, cognizable in equity, though inoperative at law, to rescind the sale by the latter to the former of the land in controversy, and to revest the title in Mary Whisenant. We are now of the opinion that this purpose and parol contract are clearly shown by the redelivery of the deed to Mrs. Whisenant; her contemporaneous abandonment of the house of her son George, where, by the terms of the deed, he was to support her for life in consideration of her conveyance of the land to him; his ceasing from that time to yield this continuing consideration; his failure, certainly after the current year, during her life, and for more than a year after her death,—in all six or seven years,—to assert any claim to the land; the constant assertion during this time of ownership by Mrs. Whisenant and her vendee, the complainant; and his repeated declarations, which we think the evidence satisfactorily establishes, that he he was tired of his mother, that "she was bothersome," that he "would not be bothered with her for two such places," that he "had

1392-93.]     OF ALABAMA.     261

about been paid for what he had done for her, and that, as she wanted the land to make a support out of or to sell, he had returned the deed to her, and had or did not intend to have anything more to do with the land," etc. It is true that there is no direct, positive evidence of an express agreement of a rescission or to rescind, and that one party swears there was no such agreement, while the mouth of the other is sealed in death, but the circumstances surrounding the transaction, the conduct of the parties, and the declarations of the defendant point with great emphasis to the conclusion that there was such an agreement, and that its terms involved an equitable reconveyance of the land to Mrs. Whisenant; and the facts adduced are inexplicable upon any other hypothesis. That such an agreement may be thus shown by circumstances with requisite certainty can not be questioned. Wat. Spec. Perf., § 493 ; Fry, Spec. Perf., § 1003. And that when the agreement is sufficiently shown,—as we now find in this case,—though relating to realty and resting in parol, equity will specifically enforce it is demonstrated in the opinion in chief. The members of this court when the case was originally decided were doubtful of the conclusion then reached on the facts, and none more so than the learned justice who delivered the opinion. We now reach a different conclusion, set aside the judgment of reversal heretofore entered, and affirm the decree of the chancery court.