(80 South. 445)

W. B. PATERSON LUMBER CO. v. PATRICK. (1 Div. 71.)

(Supreme Court of Alabama. Dec. 19, 1918.)

1. PARTIES ⟨Key⟩65(1)—STRIKING OUT PARTY—STATUTE.

In an action by two plaintiffs to recover a lien for stumpage, the amendment of the complaint by striking out one party plaintiff was permissible, under Code 1907, § 5367, and Acts 1915, p. 605.

2. LOGS AND LOGGING ⟨Key⟩3(13) — LIEN FOR STUMPAGE—STATUTE.

The lien for stumpage created by Code 1907, § 4814, extends to and includes the lumber produced by the manufacture of the timber sold.

3. PRINCIPAL AND AGENT ⟨Key⟩180—STUMPAGE LIEN—RIGHTS OF PURCHASER—NOTICE.

In suit for damages and to fix a lien for stumpage involving issue whether defendant, a purchaser of lumber cut from timber on plaintiff's land, had notice of plaintiff's lien, an alleged agent of purchaser in running the mill and a joint employé of seller and purchaser, without authority to purchase, was not such an agent as to charge his notice of lien to purchaser.

4. EVIDENCE ⟨Key⟩473—COLLECTIVE FACT—POSSESSION.

In an action for damages and to fix a lien for stumpage, a witness was properly permitted to testify that he put plaintiff in possession of the lumber cut from timber on plaintiff's land before it was shipped, as possession is a collective fact, and not an opinion or conclusion.

5. APPEAL AND ERROR ⟨Key⟩1051(2)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In action for damages and to fix a stumpage lien, the admission of a conversation between plaintiff and his son as to taking charge of lumber, if error, was not injurious, where the undisputed evidence showed that plaintiff did assert his claim, and did not consent to its removal until hearing from defendant, a purchaser as to the charge for stumpage.

6. LOGS AND LOGGING ⟨Key⟩3(15)—STUMPAGE LIEN — MEASURE OF DAMAGES — CONSTRUCTION.

In action for damages and to fix a stumpage lien against the purchaser of lumber from one who had cut timber from plaintiff's land, an instruction on the theory of purchaser's liability if he had notice of lien before purchasing, that plaintiff might recover its reasonable market value or such value as would satisfy any amount due from seller, was proper.

7. LOGS AND LOGGING ⟨Key⟩3(15) — STUMPAGE LIEN—MEASURE OF DAMAGES—INSTRUCTION.

In action for damages and to fix stumpage lien against purchaser of lumber from one who had cut timber from plaintiff's land, an instruction authorizing a recovery for full amount of stumpage on hypothesis of purchaser's agreement to pay the stumpage, as a condition precedent to plaintiff's consent to let it be shipped, was error, where there was no proof of purchaser's agreement to pay all stumpage.

Appeal from Circuit Court, Mobile County; Norvell R. Leigh, Jr., Judge.

Suit by Charles T. Ezell, revived after his death by R. W. Patrick, as administrator, and C. Agnew Ezell, against W. B. Paterson, individually, and W. B. Paterson doing business under the name and style of the W. B. Paterson Lumber Company. C. Agnew Ezell stricken as a party plaintiff, and judgment for plaintiff, and defendant appeals. Reversed and remanded.

The claim is for a certain amount of damages for stumpage of timber and to fix a lien on the lumber cut from the trees, and the claim is also stated as for the breach of

an agreement made between plaintiff and defendant that defendant would pay all stumpage then due if plaintiff would permit the defendant to remove said lumber.

The action was begun by C. T. Ezell and Agnew Ezell, but C. T. Ezell having died, the cause was revived in the name of his administrator, and Agnew Ezell was stricken as a party plaintiff. It seems that Carlton L. Williams sold to Paterson the timber in question, said Williams having cut and sawed the lumber from hardwood trees obtained from the land of the said Ezell. The facts and question as to notice to Paterson of Ezell's claim to stumpage sufficiently appear from the opinion. The court charged the jury as follows, orally:

"He says, in the first place, that the defendant, W. B. Paterson, purchased this lumber that was manufactured from the timber from the Williams Lumber Company, and that before he purchased it he had notice of the fact that the plaintiff's intestate in this case claimed a lien on this timber. Now, if the plaintiff had reasonably satisfied you of the fact that the defendant did purchase lumber from C. L. Williams or the Williams Lumber Company, and that evidence further reasonably satisfies you that the timber was in existence at the time the trade was made for the purchase, and that at that time, or at any time prior thereto, the defendant had notice of the fact that Mr. Ezell claimed a lien on the timber, and if you further find that he really did have a lien as defined to you by the court, and if you further find that with such knowledge or notice the defendant purchased that lumber and has appropriated and sold it, then he would be liable to the plaintiff for the reasonable value of that timber, or so much thereof as might be necessary to satisfy the plaintiff for the amount of stumpage that the evidence may show you to be due from Williams to the plaintiff's intestate in this case. That is, gentlemen, if at the time the defendant purchased this lumber, and at the time he purchased it, or if at any time prior to the time he purchased it and paid for it, if you find he did pay for it, he had notice that Ezell claimed a lien on it for stumpage, and with such knowledge or notice he purchased this lumber and paid for it and appropriated it to his own use, and sold it, then he would be liable to the plaintiff for the reasonable market value of the lumber so purchased by him from Williams, or so much thereof as may be necessary to satisfy Ezell's claim for stumpage, if you find that Williams was owing Ezell anything for stumpage.

"I will make that a little plainer. If he purchased any of the lumber with notice, received then or prior to the time of the purchase, that Mr. Ezell was asserting a lien on it, and if you further find that Mr. Ezell was asserting a lien on it, and if you further find that Mr. Ezell was entitled to a lien, as defined by the court, then the defendant would be liable to the plaintiff for the reasonable market value of the lumber so purchased with such notice, or so much value as may be necessary to satisfy any amount that might be due from Mr. Williams to Mr. Ezell for stumpage. Whether he had such notice or not is a question for you to determine from the evidence in the case, and whether or not there was a lien is a question for you to determine from the evidence in the case, under the law as laid down by the court.

"The second contention is that, regardless of the fact whether the defendant had any notice of the existence or alleged existence of this lien or not, that prior to the removal of the last lot of lumber from Lott's place, where it is claimed the lumber was cut and stored, Mr. C. T. Ezell notified the defendant that he was claiming a lien on the lumber then remaining thereon, the stumpage which he claimed was due from Williams to him, and the plaintiff further claims that after this notice was received, and after he forbade the defendant from removing the lumber until the stumpage was paid, that defendant promised that if he would permit the removal of the lumber he would pay Mr. Ezell whatever stumpage that might be due from Williams to the plaintiff, to Mr. Ezell. If that is true, if you are reasonably satisfied of the truthfulness of that contention, and if pursuant to that agreement, Mr. Paterson, the defendant, did remove the lumber, then he would be bound under that agreement to pay plaintiff any stumpage that the testimony may show to be due from Williams to Mr. C. T. Ezell."

Armbrecht, Johnston & McMillan, of Mobile, for appellant.

R. Percy Roach, of Mobile, for appellee.

ANDERSON, C. J. [1] The amendment of the complaint, by striking out Agnew Ezell as a party plaintiff, was permissible. Section 5367 of the Code of 1907; Acts of 1915, p. 605.

[2] It has been settled by this court that the lien for stumpage, created by section 4814 of the Code of 1907, extends to and includes the lumber produced by the manufacture of the timber sold. Winfield Lumber Co. v. Partridge, 80 South. 821;[1] Thornton v. Dwight Mfg. Co., 137 Ala. 211, 34 South. 187. Hence there is no merit in any of appellant's assignments of error which suggest that Ezell's lien for stumpage did not extend to the lumber into which the timber had been manufactured.

[3] One of the sharp conflicts in this case was whether or not the defendant had notice before purchasing the lumber that Ezell had a lien for stumpage. The trial court permitted the witness Williams, the owner of the lumber and who purchased the timber from Ezell, to state, over the objection of the defendant, that he told one Manskey while at the mill that he owed Ezell for the stumpage. It appears that Manskey was employed and paid jointly by the defendant and Williams. It is true, defendant testified that he told Williams what Manskey's duties would be, "that he was to be in charge of running the mill, stacking of lumber, sawing of it and attending to everything generally around the place. I told Williams I would pay on Manskey's report to me when the bills of sale were drawn up in accordance with Manskey's reports. I had nothing to

[1] Post, p. 437.

do with running the mill; all that Manskey did for me was to make the reports upon which I paid Mr. Williams the money. I paid half of Manskey's salary." Williams also stated that they paid Manskey jointly, and that he frequently represented him in running the mill during his absence. It seems from the evidence that Manskey was the joint employé of Williams and the defendant, and that all he did around the mill was for the benefit of Williams except as to the inspection and shipment of the lumber and making a report on same, which was for the protection of defendant but for the joint interest of both parties. He was clothed with no authority from the defendant to purchase lumber, and was as much under the control of Williams as the defendant. We do not, therefore, think that Manskey was such an agent of the defendant or was clothed with such authority when acquiring this notice as to charge the defendant with same, and the trial court erred in permitting this proof over the objection of the defendant.

[4] There was no error in permitting the witness to testify that he put Mr. Ezell in possession of the lumber before it was shipped. Possession is a collective fact and not an opinion or conclusion, and it is competent for a witness to state who was or was not in possession of property. Cooper v. Slaughter, 175 Ala. 211, 57 South. 477; Wright v. State, 136 Ala. 139, 34 South. 233; Barron v. M. & O. R. R., 2 Ala. App. 555, 56 South. 862.

[5] Whether the conversation between Agnew Ezell and his father as to going down and taking charge of the lumber and what was said between them was or was not error matters not, for if error it was not injurious, as it related to an effort of C. T. Ezell to assert his claim to the lumber before it was shipped, and the undisputed evidence showed that he did assert his claim and could have subjected the lumber to same before it was shipped, and did not consent to the removal of same until hearing from the defendant as to the charge for stumpage.

It may be that when the memorandum made by Hitchcock was offered in evidence, it was merely his declaration and not admissible against the defendant, but there was subsequent proof that the lumber was measured and estimated by Hitchcock as the agent or representative of defendant, and from which the jury could infer that the same was estimated and measured by Hitchcock as the agent of defendant and while acting within the scope of his authority. True, the probative force of the estimate may have been weakened by the statement of the defendant that while he had Hitchcock measure and estimate the lumber, the correctness of same was questioned.

[6, 7] The trial court charged the jury orally as to the plaintiff's right to recover upon two theories. The first being upon the idea that the plaintiff's intestate had a lien upon the lumber for stumpage and of the defendant's liability for same if he had notice at or before purchasing the lumber of said claim, and upon this theory this charge was free from error. Upon the second theory, however, there was error. The charge, in effect, authorized the recovery by plaintiff as for the full amount of the stumpage due for all of the lumber from Williams to Ezell upon the hypothesis of defendant's agreeing to pay the stumpage as a condition precedent to the consent by Ezell to let the lumber then on hand go forward to Mobile. We think that so much of the oral charge as excepted to by the defendant upon this theory of the case, both before the jury retired and after it returned for further instructions, was erroneous. There was no proof that the defendant agreed to pay all stumpage due from Williams to Ezell as a condition precedent to Ezell's consent for the last shipment to go forward. In fact, the court should have restricted the plaintiff's recovery under this theory of the case to the stumpage due upon the particular lot of timber then on hand, as there is nothing in the correspondence, the sole evidence of the assumption by defendant to pay the stumpage if Ezell would let the shipment go on, to indicate that the defendant undertook expressly, or inferentially, to answer for any stumpage claim or lien other than for the timber or lumber composing this particular shipment. Ezell's letter to the defendant claimed no back stumpage, but clearly indicated that it related only to the timber constituting the shipment in question. It says:

"I have explained to Mr. Williams that I am not willing for the lumber to be moved until the stumpage was paid."

Again:

"This is to advise you that the stumpage on this timber has not been paid, and to advise you not to move it off the premises until the stumpage has been paid or the matter is adjusted in a satisfactory manner."

The defendant's letter in reply, and upon which Ezell acted, did not agree to pay all stumpage due by Williams and upon other timber, but was confined to the stumpage upon this particular timber. The letter says:

"As indicated in my telegram, just as soon as this lumber has been shipped and tallied so I can get at the number of feet, I will agree to pay you whatever stumpage I may owe you on this."

This correspondence shows that the defendant only agreed to answer for stumpage that he might owe on this particular lumber, and the defendant did not thereby undertake to assume the payment of all stumpage due from Williams to Ezell for other timber. The trial court, therefore, erred in not confining plaintiff's recovery upon the second theory of

the case to stumpage due upon the lot of lumber then on hand. The other insistencies of error not specially treated involve no reversible error.

For the errors above designated, the judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

McCLELLAN, SAYRE, and GARDNER, JJ., concur.