(89 South. 100)

PATRICK v. PATERSON. (1 Div. 390.)

(Court of Appeals of Alabama. Nov. 9, 1920. Rehearing Denied Dec. 7, 1920.)

1. Logs and logging ⟊3(13)—Purchaser's agreement to pay stumpage held stumpage on which he had caused owner to lose lien.

An agreement by one purchasing timber from W. to pay the owner of the land from which it was cut whatever stumpage he owed him is an agreement to pay stumpage due by him for having destroyed the owner's lien, and not all that due by W.

2. Logs and logging ⟊3(15)—Amount due under agreement to pay stumpage held for jury.

In an action for stumpage by the owner of land from which timber was cut by a purchaser and sold to defendant, where the latter agreed to pay the owner whatever stumpage he owed him, it was for the jury to say what stumpage was due by him.

3. Logs and logging ⟊3(13)—Owner of land suing for stumpage must show defendant purchased timber with notice of lien.

In an action for stumpage against a purchaser of timber cut from plaintiff's land, plaintiff must show that defendant purchased the timber with notice, at the time or prior thereto, that plaintiff was asserting a lien on it.

4. Logs and logging ⟊3(15)—Bills of sale and evidence of payments admissible to show whether purchaser of timber had notice of stumpage lien.

In an action for stumpage by the owner of land from which timber was cut by a purchaser and sold to defendant, it was proper to receive in evidence the bills of sale executed by such purchaser to defendant and evidence of the payments made by the latter, to determine whether defendant purchased with notice of the lien.

---

⟊For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**5. Assignments** ⟨key⟩**134—Administrator suing for stumpage must show himself assignee of intestate's co-owner.**

Under Code 1907, § 4814, giving owners of land 'or their assignees a lien on timber sold therefrom, the burden is on an administrator of the estate of one of two co-owners suing a purchaser of timber from one to whom it was sold by his intestate, to show that he is the assignee of his intestate's co-owner.

Appeal from Circuit Court, Mobile County; Joel W. Goldsby, Judge.

Assumpsit by R. W. Patrick, as administrator of the estate of C. T. Ezell, against W. B. Paterson, individually and doing business as the Paterson Lumber Company. Judgment for the defendant, and plaintiff appeals. Affirmed.

On May 31, 1921, this cause was reversed and remanded, under the authority of Ex parte Patrick, as Administrator, v. W. B. Paterson, 205 Ala. 662, 88 South. 837.

Roach & McConnell, of Mobile, for appellant.

Recovery may be had on the common counts in this case. 155 Ala. 285, 46 South. 477; 165 Ala. 228, 51 South. 735; 193 Ala. 94, 69 South. 436. The court erred in submitting to the jury the construction of the contract. 62 Ala. 230; 66 Ala. 310; 44 Ala. 477, 4 Am. Rep. 140; 66 Ala. 360. Patterson, claiming under Williams, could not dispute Ezell's right to claim assumpsit. 151 Ala. 235, 43 South. 859, 11 L. R. A. (N. S.) 581; 165 Ala. 290, 51 South. 770; 88 Ala. 294, 6 South. 907. Patterson was under no sort of duress. 133 Ala. 489, 31 South. 973; 163 Ala. 657, 50 South. 997; 191 Ala. 291, 68 South. 20, L. R. A. 1915D, 1118, Ann. Cas. 1917C, 1024.

Armbretch, Johnson & McMillan, of Mobile, for appellee.

Plaintiff could not recover on an implied contract, as Patterson was bona fide purchaser for value without notice of appellant's claim. 120 Ala. 59, 24 South. 1; 67 Ala. 237. Plaintiff was not entitled to recover on express contract, and, as the facts were in dispute, it was a question for the jury. 13 C. J. 311, 312; 165 Ala. 655, 51 South. 936; 25 Ala. 440; 25 Ala. 326, 60 Am. Dec. 521; 20 Ala. 209; 112 Ala. 436, 20 South. 624; 66 Ala. 398.

BRICKEN, P. J. This action was instituted originally by C. T. Ezell and C. A. Ezell, as plaintiffs. C. T. Ezell died, and the cause was revived in the name of his administrator, R. W. Patrick; and C. A. Ezell was by amendment stricken as a party plaintiff.

The complaint consisted of several counts, but the cause was tried upon counts 5 and 7, these two counts being the common counts. Count 5 was upon "account," and 7 was "for money had and received."

This case was once before the Supreme Court. 80 South. 445.[1] The plaintiff's theory of the case is stated in the bill of exceptions as follows:

"We claim the plaintiff's intestate, C. T. Ezell, had a lien for stumpage on the last lot of oak lumber and timber shipped from the Lott's Ferry Place, his claim being based on his ownership of a half undivided interest in said place, and as assignee of their part of said stumpage from the owners of the other half undivided interest in said place, and that said oak timber and lumber was still on said premises at the time the contract was made, and that while the said timber and lumber were still on said place C. T. Ezell had the right to enforce his lien for said stumpage on said timber and lumber, and said C. T. Ezell was then in the act of detaining same until he could enforce his said lien by law, and that thereupon the defendant Paterson entered into the contract to pay C. T. Ezell the said stumpage, if permitted to move said oak timber and lumber from said premises, and that the stumpage lien was being proved, and the amount of the stumpage claimed was being shown, to show the consideration of the said contract, and that the amount due thereunder was the amount sued for."

The testimony showed that one Williams had cut the trees, and had sold the timber to defendant, and that the stumpage had not been paid. The testimony was in conflict as to whether defendant, at the time he bought the lumber from Williams, had knowledge of the lien. The testimony shows that the lands from which the trees had been cut belonged to C. T. Ezell and L. H. Ezell, wife of C. A. Ezell, each owning an undivided one-half interest, and there was proof tending to show that C. T. Ezell had acquired the interest of L. H. Ezell in the stumpage lien.

There is no dispute between the parties that the owners of the land were entitled to the lien for stumpage, as provided by Code 1907, § 4814, and there is no . dispute that the stumpage is unpaid. The point in controversy was: Is the defendant liable for the unpaid stumpage?

It will be noted that the plaintiff is not suing in case for a destruction of his lien, but he is relying upon a contract which he claims was made by the defendant, agreeing to pay the stumpage, and which he claims is embodied in the following correspondence between him and defendant:

"Lisman, Ala., Oct. 29, 1915.

"Mr. W. B. Paterson, Mobile, Ala.—Dear Sir: Your letter of October 25th to Mr. C. L. Williams was turned over to me by Mr. Williams, and I find in it nothing definite with reference to settlement for stumpage of the timber, and since that time Mr. Williams has phoned me

that barges will be up Monday for loading the lumber out. I have explained to Mr. Williams that I was not willing for the lumber to be moved until the stumpage was paid, and Mr. Williams advised me that he had written to you to this effect, and I was disappointed that you did not state in the letter whether or not you would pay this.

"This is to advise you that the stumpage on this timber has not been paid, and to notify you not to move any of it off the premises until the stumpage has been paid or the matter adjusted in a satisfactory manner, and should you make an effort to move the stock it would force me to resort to legal means to collect the stumpage, which I trust you will not make necessary.

"Please wire me Saturday what you will do and follow this with a letter, and please bear in mind that I am not going to allow the stock to move until the matter is adjusted.

"Yours very truly,     C. T. Ezell."

"Mobile, Ala. 11/1/15.

"C. T. Ezell, Lisman: As soon as lumber has been tallied, so can tell amount, will pay you whatever amount of stumpage that I may owe you.     W. B. Paterson."

"Mobile, Ala., Nov. 1, 1915.

"Mr. C. T. Ezell, Lisman, Ala.—Dear Sir: This is to acknowledge receipt of your letter of the 29th ultimo, and to confirm my telegram of today. Your letter was not answered by me until this morning, as I was out of town and did not arrive in Mobile until too late Saturday night.

"As indicated in my telegram, just as soon as this lumber has been shipped and tallied so I can get at the number of feet, I will arrange to pay you whatever stumpage I may owe you on this.

"Judging from Mr. Williams' letter and also from your letter, you are of the opinion that I am trying or am going to try to beat you in some way so far as the stumpage goes, but I can assure you that nothing is further from my mind.

"Yours very truly,     W. B. Paterson."

[1] The plaintiff claims that this was a contract on the part of the defendant to pay the stumpage that was due on the trees by Williams, but defendant claims that it was only to pay such stumpage as he, the defendant, was due. We call attention to the wording of both the telegram and letter. In the telegram he says: "Will pay you whatever stumpage that I may owe you." In the letter he says: "I will arrange to pay you whatever stumpage I may owe you on this." We are of the opinion, and so hold, that this was an agreement on the part of defendant to pay the stumpage that defendant was due, and not the stumpage that was due by Williams. In other words, it was an agreement to pay whatever amount defendant was due plaintiff for having destroyed his lien for stumpage on the timber.

[2] It follows, therefore, that it was for the jury to say what, if any, stumpage was due by defendant under this agreement.

This holding is not in conflict with the opinion of the Supreme Court in this case. 80 South. 445.[2] There the court held that the contract was to pay the stumpage on that particular lot of lumber, so then the question arises, Was there any stumpage due by defendant? This was a question for the jury, and therefore we hold that there was no error in refusing to give the affirmative charge requested in writing by the plaintiff.

[3] Was the defendant liable for any stumpage? In order to fix liability upon the defendant, it devolved upon the plaintiff to show that the defendant purchased the timber from Williams with notice, received either at the time of the purchase or prior thereto, that the vendors of the timber were asserting a lien upon it. In other words, it devolved upon the plaintiff to make such proof as would have entitled him to recover of defendant in an action on the case for a destruction of the lien upon the timber. The defendant contended that he purchased without notice of the lien, and, if so, then he would not be liable for a destruction of the lien.

[4] There were many exceptions reserved as to the rulings of the court upon the admission of testimony. We do not deem it necessary to pass separately upon each of these rulings, but it is sufficient to say that it was proper to receive in evidence the bills of sale that were executed by Williams to defendant, and evidence of the payments made by defendant to Williams to be considered by the jury in determining whether or not defendant purchased with notice of the lien.

The defendant also contends that it was not the intention of the defendant to agree to pay the stumpage that was due by Williams, but only to pay such balance, if any, there was found to be due him by Williams. We do not think this was the proper construction of the contract; to the contrary, we are of the opinion, as above stated, that it was an agreement to pay such an amount as the defendant was liable for by reason of having purchased the timber and destroyed the lien thereon for stumpage.

[5] Section 4814 of the Code of 1907 reads as follows:

"Owners of land, or their assignees, shall have a lien upon timber sold therefrom for purposes of rafting, shipping, or manufacture, for the stipulated price or value thereof, commonly known as stumpage."

The lien on the timber belonged to C. T. Ezell and L. H. Ezell, the owners of the land, and it devolved upon plaintiff to show that he was the assignee of the interest of L. H. Ezell. It follows, therefore, that there was no error on the part of the court in giving charge 4A requested in writing by defendant.

_____
[2] 202 Ala. 363.

There was no error in the portions of the oral charge of the court to which exceptions were reserved. The judgment of the lower court is affirmed.

Affirmed.