## EWING vs. SANFORD.

| 19 | 605 |
| 123 | 666 |

1. In an action on the case for a malicious prosecution, the judgment of the justice ordering the commitment of the plaintiff is evidence, and in the absence of countervailing proof, sufficient evidence of the existence of probable cause, but the plaintiff is not thereby concluded from introducing proof to show that the prosecution was without probable cause and malicious.

2. An affidavit made for the purpose of procuring the arrest of the party accused, which charges that "the said S. has feloniously taken, stolen and carried away from the possession of C., where she was placed by affiant, a negro woman named Eliza, valued at $450, and that she is now in the possession of the said S." is sufficiently descriptive of an offence against the criminal laws of the country to justify the magistrate in causing the party accused to be apprehended and brought before him.

3. An action on the case for a malicious prosecution may be maintained, although the warrant for the party's arrest does not describe the offence with which he was charged, and the affidavit, warrant for commitment and recognizance misdescribe it.

4. When the facts are ascertained and undisputed, the question whether they constituted probable cause is a pure question of law, which it would be erroneous for the court to refer to the jury; but where the facts are to be ascertained by the jury from evidence which is doubtful or conflicting, probable cause becomes a question for the jury.

5. If the charge given by the court is legally correct, although the jury, from the general terms in which it is expressed, may be misled in applying it to the particular facts, yet an objection to it cannot be sustained. The party objecting should ask a more specific charge.

6. The owner of personal property being entitled to the present possession of it, when he has been deprived of it, has a right to re-take it whenever he can obtain the possession without a breach of the peace, whether he believes his title *bona fide* or otherwise.

7. A charge is erroneous which asserts, that if the facts establish a want of probable cause malice is a necessary implication *independent of the circumstances in proof*.

ERROR to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

THIS was an action on the case by Sanford v. Ewing, to recover damages for a malicious prosecution. The affidavit made by Ewing to procure Sanford's arrest is sufficiently described in the opinion of the court. Sanford was committed by the magistrate, and was afterwards discharged on *habeas corpus* by Judge Bragg. It appears from the bill of exceptions that the negro mentioned in the affidavit was bought by Ewing at sheriff's sale under an execution against Thaddeus Sanford, and placed in the possession of one Carmelick. James Sanford, the plaintiff, claimed said negro under a bill of sale from said Thad. Sanford, and gave notice at the time of sale that the negro was his and that he would take her whenever he could do so. The exceptions and charges will be easily understood from the opinion.

HOPKINS, for plaintiff in error:

1. There is no statement in the affidavit that Eliza was a slave, or the property of Ewing, or any other person, known or unknown. Larceny can be committed only of the personal goods

of some person. The affidavit therefore makes no charge of larceny.—2 Chitty's Black. Com., 179, 186. As negroes may be either slaves or free, there could be no charge of larceny made for taking a negro, if the law made slaves the subject of larceny, unless the charge included a statement also that some person had property in the slave.—Ib. 189-90. To steal and carry away a slave is not either grand or petit larceny.—Clay's Dig. 425, § 57-8. There is no such offence known to the common law as stealing a slave.—Murray v. State, 18 Ala. 727. An indictment for taking and carrying away a slave, as for a larceny at common law, does not lie in this State.—15 Ala. 259 ; 17 ib. 188 ; 18 ib. 727.

The affidavit of Ewing did not charge that the negro taken by Sanford was a slave, in the language of the statute which makes slave-stealing an offence, and therefore no offence was charged against him.—4 Por. 410 ; 7 ib. 101. The statement that she was worth $450, is not equivalent to a charge that she was a slave. Those who commit an offence created by statute can only be proceeded against according to the statute, and the offence must be charged in the language of the statute.—18 Ala. 727 ; 4 Por. 410. The lawless intention required by the statute should also have been charged in the affidavit, to make it a charge of a crime against Sanford.—8 Ala. 333, and authorities last cited ; 53 Law Library, Cook's Law of Defamation, top page, 22.

2. The warrant for Sanford's arrest did not charge that he had committed any offence. His subsequent commitment by the justice for grand larceny created no liability against Ewing. Ewing is no more responsible for the erroneous judgment, t an he would have been if the justice had committed S. for robbery and murder. If an affidavit states facts which do not constitute an offence, and the justice supposing that they do, should issue his warrant and commit the party for an offence, the affiant would not be liable for the prosecution.—3 Espinasse R. 165 ; 1 Stew. 494.

3. The declaration contains no cause of action, first, because it sets out the affidavit which charges no offence, (see authorities last cited,) and second, because it shows that the justice committed Sanford.—1 Wilson R. 232; Bull. N. P. 14; 15 Mass. 243.

4. The first charge of the court is erroneous, because it assumes that the proceeding of the justice was proper and author-

ized by the affidavit, and that Ewing is responsible for the warrant and commitment, although his affidavit charged no offence which authorized the justice to proceed against Sanford. An action for malicious prosecution can only arise out of proceedings which were authorized by law if the charge on which they were founded had been true. In a criminal proceeding authorized by law, the accused would be punishable for resisting arrest, for escaping from custody, or for breaking prison; but he may do any or all of these acts with impunity, if the charge or proceeding against him be for something which is no offence.—1 Chitty's Prac. 48. For imprisonment under illegal process, when the charge or proceeding against the accused is for an act unknown to the law as an offence, his remedy is an action of trespass.— Chitty's Prac. 49-50; ib. 636-7; Duckworth v. Johnson, 7 Ala. 578.

5. The court erred in charging that Sanford had the right of re-capture. Ewing was not the plaintiff in the execution under which the negro was sold, and was therefore no party to the injury done to Sanford, if any there was, by the seizure and sale. The re-capture by Sanford was an injury both to Ewing and Carmelick.—1 Chitty's Prac. 639-41. The negro at the time of the levy, and before it, was in the possession of Thad. Sanford, and after the sale and purchase by Ewing, the possession was transferred to him from the custody of the law and by its authority. Ewing's possession ought to be protected by law against the claims of third persons until they have been adjudicated. If Sanford had any claim he should have proceeded to enforce it in the manner prescribed by statute, which he refused to do, although requested by the sheriff. A purchaser of land at a sheriff's sale is driven to his action of ejectment, or trespass to try titles, to recover the possession from any person having it, even from the defendant in execution himself.—2 Por. 480; 6 Ala. 222. It would seem to follow that the purchaser of any kind of property at sheriff's sale, the possession having been delivered to him by the sheriff, ought to be protected against recaption by a third person.

6. Probable cause is a question of law, and the court erred in leaving it to the jury to decide.—2 Chit. Black. Com. 99, note 14; 1 Term R. 309; 1 Wilson R. 232; Bull. N. P. 14. The question of probable cause should have been submitted to

the jury upon Ewing's belief of the guilt or innocence of Sanford.—11 Ala. 921. The court should have charged the jury that probable cause must be inferred from the commitment of Sanford by the justice, unless the plaintiff proved express malice.—1 Wilson R. 232; Bull. N. P. 14; 4 Munf. 469.

CAMPBELL, *contra.*

CHILTON, J.—The first objection taken by the plaintiff in error is, that the declaration contains no legal cause of action, first, because it shows that the justice committed the plaintiff below, thereby adjudging that there was probable ground for the prosecution, and *express* malice is not averred. To this point Reynolds v. Kennedy, (1 Wils. 232) is cited by the counsel for the plaintiff in error. In that case the defendant had exhibited an information against the plaintiff before the sub-commissioners of excise, alleging a violation of the revenue laws, in consequence of which certain goods in the plaintiff's vessel had been seized and condemned by the sub-commissioners, but their judgment of condemnation was reversed by the commissioners of appeal. Lee, C. J. said, "I shall first premise that although an action will lie against one for proceeding *wrongfully* in an *inferior court* in many cases, yet it is a kind of action not to be favored; and whenever such action is brought, the *express malice* and grievance must be laid in the declaration *and proved*, and it is not enough to say that the defendant brought an action against the plaintiff, *ex malitia et sine causa, per quod* he put the plaintiff to great charges." He further proceeds to say in speaking of the declaration, "the plaintiff having laid in his declaration that the commissioners condemned the goods, shows a foundation for the defendant's prosecution before them, so that this part of the declaration is plainly *felo de se.*" This decision seems to be supported by some of the older English cases. But we have examined the numerous cases touching this point with much care, and we have been unable to arrive at the conclusion that when the declaration charges, as this does, that the prosecution was without probable or reasonable cause, and wrongful and malicious, the fact that the magistrate committed the plaintiff, unless he gave bail to appear at court, should destroy the right of action. In many cases, this commitment is predicated alone upon

the information of the prosecutor, which information the declaration charges to be malicious and unfounded.   To hold that the action of the magistrate, which the prosecutor thus superinduces by his malicious and false charge, should protect him against liability to the injured party, would be to allow him to take advantage of his own wrong.   The correct rule upon this subject seems to be, that the judgment of the justice ordering the commitment is evidence, and in the absence of countervailing proof, sufficient evidence of the existence of probable cause, but it is not conclusive.—1 T. R. 505; ib. 545; 4 Wend. 591.   The plaintiff is not thereby concluded from introducing proof to show that the prosecution was without probable cause and malicious.

But it is urged that the affidavit made by Ewing before the justice does not set forth a criminal charge, and that consequently the justice had no authority to issue any warrant as predicated upon it.   We confess we have had some difficulty on this point, and have looked into the cases in vain for a satisfactory solution of it.   There are, however, some decisions of this court, which, though not directly in point, are, in the application of the principle settled by them, persuasive to show that the court below properly regarded the affidavit as sufficient to authorize the justice in issuing his warrant for the arrest of the defendant in error.

In Bennett v. Black, (1 Stew. 39,) the warrant was "to answer a charge of robbery, by *forcibly* taking one negro from and out of the possession of one Bennett."   The affidavit on which the warrant issued stated that the parties prosecuted "violently and with force and arms seized upon and took from his possession and against his will, a negro slave, his property, &c."   The court, upon the trial for malicious prosecution, was called upon to instruct the jury that the warrant did not contain a charge of felony, or any crime which would authorize the action for malicious prosecution, which charge was refused, and this court sustained the judgment of the court below on that point.   It was proved in that case as in this, that the prosecutor was apprised of the character of the warrant.

In Randall v. Henry, (5 Stew. & Por. 367,) it was said to be not material that the information to the magistrate or the warrant thereon should be in the form of technical accuracy.   Were the law otherwise, the prosecutor could in most cases avoid this action by omitting, *ex industria*, some averment which is required

Ewing v. Sanford.

in the technical description of the offence. In the case last cited, it is said with regard to the party who obtains the issue of irregular process, "there seems to be no reason why the person prejudiced should not be at liberty to support an action on the *case* against him, where there was no cause of action, and the proceeding was *malicious, as well as irregular*, for it would be allowing him to take advantage of his own wrong to suffer him to turn the plaintiff round on such objection, after he had in an action on the case proved the malicious and unfounded conduct of the defendant; and it is also declared that where a party maliciously procured a magistrate to issue an illegal warrant he was held liable in an action on the case;" citing 1 Chitty's Pl. 169; 2 Chitty's R. 304.

It is certainly true, that the prosecutor is not to be held responsible for the mistake of the justice in misdescribing the offence.—Bennett v. Black, 1 Stew. 494. In the case before us the affidavit is certainly very informal. It does not state that the negro Eliza is a slave, or that she was the property of any one, nor does it aver any intent on the part of the defendant to convert her to his own use or to the use of any other person, or to enable her to reach some other state or country where she may enjoy her freedom, so as to bring the offence technically within the purview of the statutory offence of slave stealing.—Clay's Dig. 419, § 18; Williams v. The State, 15 Ala. 259, and case cited; Ham v. The State, 17 Ala. 188; The State v. Weaver et al. 18 ib. 293. But it does state that Sanford had *feloniously* taken, stolen and carried away a *negro woman* of *value*, &c., from the possession of Carmelick, where the prosecutor had placed her, &c. We think this is sufficiently descriptive of an offence against the criminal laws of the country to justify the magistrate in causing the party accused to be apprehended and brought before him. The information imputes the crime of felony in an informal manner—that Sanford *feloniously* took, that is, with a wicked heart and a fixed purpose to commit a crime, a negro woman, *prima facie*, a slave, of a certain value, from the *possession* of Carmelick, and that she is now in the *possession* of the party accused, &c. Such a description does not sufficiently set out the constituents of the statutory offence to make a good indictment, but it has been held that an action of this character may be maintained

against a party for the malicious prosecution of a bad indict-ment; (6 Maule & Selw. 29,) and although the warrant for the party's arrest does not describe the offence, and the warrant for the commitment and recognizance for his appearance for further examination misdescribe it, yet these are inaccuracies which the law, from the necessity of the case, regards with indulgence. Hence the statute provides, that no person imprisoned for any criminal or supposed criminal offence, shall be discharged for any irregularity in the process, order or warrant of commitment, but the court or magistrate granting a *habeas corpus*, or before whom such warrant may be returned, shall inquire into the facts, &c., and admit to bail, or remand the prisoner, as the law and justice may require.—Clay's Dig. 469, § 40; State v. Weaver, 18 Ala. 293, 299. Upon the whole, we come to the conclusion, but, we confess, not without hesitation, that this proceeding, based upon the information of Ewing, if prosecuted maliciously and without any reasonable or probable ground therefor, will sus-tain this action.

Let us next turn to the charges. The circuit judge instructed the jury that they should determine, as reasonable men, from the evidence, whether there was or was not probable cause for the prosecution. It is objected to this charge, that the question as to what amounts to probable cause, being a question of law, should have been decided by the court, instead of being sub-mitted to the jury. Were the facts ascertained and undisputed, the question whether they constituted probable cause would be a pure question of law, and in such case it would be erroneous for the court to refer such question to the jury. But where facts are to be ascertained by the jury from the evidence, which is doubtful or conflicting, the most that the court can do is to charge the jury hypothetically as to what would or would not constitute reasonable or probable cause for the prosecution; and in such case, probable cause becomes a question for the jury. So that, in the language of Lord C. J. Denman, in the case of James v. Phelps, (11 Ad. & Ellis, 508,) "the question whether there be or be not probable cause, may be for the jury or not, according to the circumstances of the particular case."—See also, Blackford v. Dod, 2 B. & Ad. 179, (S. C., 22 Eng. C. L. 53;) McDonald v. Rooke, 2 New Cas. 217, (S. C., 29 Eng. C. L. 312.) We think the case before us presents a state of facts which war-

ranted the judge in submitting the question to the jury, it being a mixed question of law and fact.

But the counsel for the plaintiff in error contends, that if the court below was justified in thus submitting the question as to whether there was reasonable or probable cause for the prosecution, to the jury, they should have been told that if Ewing honestly believed there was probable ground for instituting the prosecution, although none such existed in fact, they should find for him. In respect to this latter proposition, we endeavored in a recent case (Long v. Rodgers, at the present term,) to lay down the rule in explicit terms, and need not here repeat what we there said. It is a sufficient response to the objection here taken, that the charge of the court upon this point was correct, as far as the judge went; and not being bound to go farther and give other charges, unless specially requested, there is no error in his omission to present this feature in the defence, since he was not requested to do so. The rule, as established by numerous decisions of this court, is, that if the charge be legally correct, although the jury from the general terms in which the court states the law may be misled in applying it to the particular facts, yet an objection to it cannot be sustained. The party objecting to it should ask a more specific charge.—Hodges v. The Br. Bank, 13 Ala. 455; The State v. Brinyea, 5 ib. 242; 14 ib. 151; 9 ib. 452; 16 ib. 63; 9 ib. 63; 1 S. & P. 181.

The charge of the court with regard to the right of recaption, was perhaps too favorable for the plaintiff in error. The charge asked for assumed that if the sheriff sold property under an execution which was not subject to such sale, yet it converted the right of the true owner into a chose in action, which ought to be enforced by action at law. This charge was given, but with the explanation that " the party under such circumstances," that is, the true owner whose property has thus wrongfully been sold by the sheriff, would not only have a right of action, but it was competent for him, *if he believed* he had a *bona fide* title to the property, to take possession of it peaccably, if he could do so. Now it is very clear that if the true owner, being entitled to the present possession of his property, can obtain possession of it without a breach of the peace, he may do so, and this whether he believes his title *bona fide* or otherwise. So that superadding the belief of the plaintiff below, as to the *bona fides* of his title, to

the title itself, as a condition upon which his right to re-capture his slave depended, was prejudicial to the plaintiff below, and not to Ewing, the defendant.

The latter portion of the charge must be construed with reference to that which it explains, and thus considered, we have no hesitation in saying that it was fully as favorable to the defendant as the law would warrant.

The court below also instructed the jury, that "malice, as in all such cases, must be determined by the circumstances. *Independent of these*, however, if the jury should be satisfied from the evidence that there was a want of probable cause, the law would imply the existence of malice." This charge was duly excepted to by the defendant below, and constitutes the only remaining subject of inquiry. If we rightly comprehend this charge, it is manifestly erroneous, and was well calculated to mislead the jury. The question as to the existence of probable cause, arising upon the evidence spread out in this record, we have said, was properly submitted to the jury, though it is frequently a question solely for the decision of the judge. The question whether the prosecutor acted maliciously, is always one of fact, which the judge has no power legally to withdraw from the jury. This charge does in effect forestall the inquiry of the jury upon the subject of the existence of malice. True, it asserts that "malice must be determined by the circumstances." But then they are told that, *independent* of the circumstances, that is, as we understand it, laying the circumstances out of view, still if the jury believed there was a want of probable cause, their duty as to any farther inquiry upon the subject of malice would cease, since the law in such case implied the malice. The want of probable cause is evidence of malice, and in the absence of exculpatory proof, is sufficient evidence, and the legal presumption of malice becomes conclusive. Hence the numerous cases which hold that malice may be inferred from the want of probable cause; for if a man prosecute another for a criminal offence, without any ground sufficient to create in the mind of a reasonably cautious and prudent man a belief of his guilt, the law attributes his conduct to a wicked and depraved heart, and justifies the jury in "presuming," or "inferring," (as the phrase usually is,) that he is actuated by malice; indeed, requires them to do so.—Long v. Rodgers, *supra*.

Ewing v. Sanford.

In Mitchell v. Jenkins, 5 B. & A. 588, (S. C., 27 Eng. C. L. 151,) the question as to the existence of malice was withdrawn from the jury by the judge on the trial at the assizes, by instructions not essentially different from the charge under consideration. The court in that case determined that there was a want of probable cause, and told the jury that there were two kinds of malice—malice in law, and in fact, and that the defendant having wrongfully caused the arrest, it resulted that there was malice in law, and the question for them was narrowed down to an inquiry of damages. Upon error to the King's Bench, Parke, J., said, "he had always understood, since the case of Johnson v. Sutton, (1 T. R. 510,) that no point of law was more clearly settled, than that in every action for a malicious prosecution or arrest, the plaintiff must prove what is averred in the declaration, namely, that the prosecution or arrest was malicious and without reasonable or probable cause; * * that when there is no reasonable or probable cause, it is for the jury to infer malice from the facts proved. That is a question in all cases for their consideration." He then proceeds to enumerate instances where there may exist a want of probable ground for the prosecution, and yet no malice; as if the party caused the arrest, acting under a wrong notion of the law and pursuant to legal advice; or if he entertain a *bona fide* belief that the cause for the arrest existed. Denman, C. J., and Patteson, J., were of the same opinion, and Taunton, J., who presided at the trial below, acknowledged his error, and also coincided with the other judges in their opinion. Professor Greenleaf thinks the opinion just quoted of Justice Parke, a clear illustration of the law of malice.—2 Greenl. Ev. (2d edit.) 431, N. 1.

The effect of the charge was to authorize the jury, if they found there was a want of probable cause, to shut out from their consideration the circumstances which tended to show (however weak they may have been) that the prosecutor was actuated by an honest belief that the plaintiff was guilty of the offence charged against him. Whether Ewing took the proper steps and used the necessary precaution to inform himself, so as to avoid the inference of malice which might arise from temerity or a reckless disregard of the rights of the plaintiff; or whether, having taken such steps, he entertained an honest belief of his guilt, are questions of fact upon which we are not allowed to express an opin-

ion.    These are inquiries for the jury, from a survey of all the proof.    It is sufficient for the purpose of this trial, that there was some evidence directed to those points, and that an entire absence of malice may consist with a want of probable cause, as was decided in Chandler v. McPherson, 11 Ala. 916, and which we have subsequently affirmed in Long v. Rodgers, *supra.*  It results then that the charge, which asserts that if the facts make out a want of probable cause, malice is a necessary implication *independent of the circumstances in proof,* is erroneous.

Let the judgment be reversed and the cause remanded.