(118 So. 794)

## UNION INDEMNITY CO. v. WEBSTER.
### (6 Div. 950.)

Supreme Court of Alabama. Oct. 25, 1928.

Rehearing Denied Dec. 6, 1928.

F. D. McArthur, of Birmingham, for appellant.

London, Yancey & Brower and Jim C. Smith, all of Birmingham, for appellee.

THOMAS, J. The suit was for damages against a deputy sheriff and surety on his official bond. The deputy having died after summons and service, the suit was discontinued as to him, and proceeded to judgment against the surety.

The plaintiff, as he ran from the direction of or within 25 or 50 yards of a still, from which whisky was running, was shot by an officer in his apprehension and arrest. Plaintiff was the only person seen by the officers at or leaving the still, and said officers were about 75 or 100 yards from plaintiff when he ran and was shot.

The original complaint was filed February 2, 1926, to which demurrer was interposed on March 5, 1926. The original complaint was amended October 9, 1926, and February 15, 1927, and on the last-named date the suggestion of the death of codefendant and principal in the bond sued on was made by defendant's sworn plea in abatement, and the death of John Davis Jones was admitted by plaintiff. The latter did not ask leave to revive against the personal representative of the principal, when known, but made a motion to strike the plea, which was sustained. There was no demurrer to the plea. After said ruling, plaintiff amended the complaint by striking as a party defendant, the principal in the official bond, leaving as only defendant the surety. The motion for discontinuance was again made by defendant and stricken on plaintiff's motion. The proper way to raise a question of law on the sufficiency of a plea (that is not frivolous on its face) is by demurrer, pointing out the defect and giving opportunity for amendment, if the plea be such as is subject to amendment. Huntsville Knitting Mills v. Butner, 200 Ala. 288, 76 So. 54; Powell v. Crawford, 110 Ala. 294, 18 So. 302; Murphy v. Farley, 124 Ala. 279, 27 So. 442; McAnally v. Hawkins Lumber Co., 109 Ala. 397, 19 So. 417; Williamson v. Mayer Bros., 117 Ala. 253, 23 So. 3; Ex parte L. & N. R. Co., 211 Ala. 531, 100 So. 843.

The distinction between a motion in

writing, made part of the pleading and the record proper, under section 9459, Code, and that for a new trial and ruling thereon, under section 6088, Code, has been heretofore declared by this court. King v. Scott, 217 Ala. 511, 116 So. 681. The plea in writing and sworn to, when duly filed, became a part of the record proper and will be so reviewed (section 9459, Code; Gen. Acts 1915, 598; Huntsville Knitting Mills v. Butner, 200 Ala. 288, 290, 76 So. 54; Collins v. M. & O. R. Co., 210 Ala. 234, 97 So. 631; Lusk v. Champion Register Co., 201 Ala. 596, 79 So. 16), as before the amended complaint, when it was stricken (B. R., L. & P. Co. v. Fox, 174 Ala. 657, 669, 56 So. 1013).

In determining the right of amendment and procedure to judgment against the surety alone, after death of the principal obligor of the official bond, without revivor against the personal representative of deceased, when known, it is necessary to examine pertinent provisions of several statutes.

The original act, as it now appears in its codification (Gen. Acts 1915, p. 605), gave the right of amendment to parties, "whether served or not," without making "a discontinuance as to any defendant not stricken out," etc. Section 5718, Code; Crawford v. Mills, 202 Ala. 62, 79 So. 456; Patterson v. Patrick, 202 Ala. 363, 80 So. 445; Carswell v. B. F. Kay & Son, 214 Ala. 619, 108 So. 518; Wright v. McCord, 205 Ala. 122, 88 So. 150; Ferguson v. State ex rel. Acton, 215 Ala. 244, 110 So. 20; Nashville, etc., v. Cox, 18 Ala. App. 672, 94 So. 247. A further statute providing for amendments to pleadings, while the cause is in progress to judgment, as to striking or adding new parties plaintiff or defendant, when not making a complete change of parties, etc., is Code, § 9513. Copeland v. Dixie Construction Co., 216 Ala. 257, 113 So. 82; B. R. R. Co. v. Ellenburg, 215 Ala. 395, 111 So. 219. And in the same connection we shall later examine the nature of the liability and survival thereof, and procedure to judgment in an action on an official bond in the absence of the principal indicated in such bond. Section 2612, Code; Bradford v. State, 201 Ala. 170, 77 So. 696; Id., 204 Ala. 46, 85 So. 435; Fite v. Pearson, 215 Ala. 521, 111 So. 15.

The provisions of section 5718 (Gen Acts of 1915, p. 605) and those of section 9513 of the Code are consistent as to amendment of parties, and are in accord with the trend of modern reformed procedure. Crawford v. Mills, 202 Ala. 62, 79 So. 456. It thus provides for the right of amendment, when the substantial rights of the parties before the court cannot be injuriously affected by the amendment. Whether served or not, such amendment shall not work a discontinuance as to any defendant not stricken out. It is provided further that "the plaintiff may recover such judgment as he may be entitled

to against one or more of the defendants." The decision in Long v. Gwin, 188 Ala. 196, 66 So. 88 (assumpsit on note), was that approving the dismissal as to the parties not served, under section 5718, Code of 1923, or section 2502, Code of 1907, and to the effect that a discontinuance as to one defendant did not so operate as to all. See, also, Strickland v. Wedgeworth, 154 Ala. 654, 45 So. 653 (ex delicto); Montgomery G. L. Co. v. M. & E. R. Co., 86 Ala. 372, 5 So. 735 (ex delicto); Lovelace v. Miller, 150 Ala. 422, 43 So. 734, 11 L. R. A. (N. S.) 670, 14 Ann. Cas. 1139 (damages for assault and battery); and Crawford v. Mills, 202 Ala. 62, 79 So. 456, was upon the principal and sureties on a public warehouse bond, and the amendment was by striking the principal.

The instant suit was brought against the principal and surety, who were duly served with process. The death of one defendant did not, under the common law, operate as a discontinuance as to the defendants living and before the court. Garrett v. Lynch, 44 Ala. 324; Bachus v. Mickle, 45 Ala. 445; Ex parte Hall, 47 Ala. 675; Hayes v. Miller, 150 Ala. 621, 43 So. 818, 11 L. R. A. (N. S.) 748, 124 Am. St. Rep. 93. The case of Garrett v. Lynch, supra, was a construction of section 5717 of the Code, as section 2546 and section 2547 of the Revised Code of 1867, or Acts 1866–67, p. 699, §§ 1, 2, as we shall later indicate. And the common-law rule as to discontinuance, by amendment, of parties not found (authority cited in case below), related to suits "founded on contract," and it was there observed that "the rule should be limited to such cases." Slade v. Street, 77 Ala. 576, 578.

It follows that the terms of the foregoing statutes authorized the amendment and procedure to judgment against the sureties, alone, on the official bond for causes and injuries within that undertaking, when the death of the principal occurs after service of process, and plaintiff, by appropriate amendment, declines to proceed against the personal representative of such decedent. Such is the effect when the provisions of section 5717 of the Code for revivor are to be considered with the express provisions of section 5718, dealing with the right of amendment without a discontinuance, and to which we have adverted. The former statute is *permissive only*, and judgment may be rendered, as we have indicated, against the survivor, without revivor as to a personal representative of deceased codefendant. That this statute is permissive merely is indicated in Garrett v. Lynch, 44 Ala. 324, and Hayes v. Miller, 150 Ala. 621, 43 So. 818, 11 L. R. A. (N. S.) 748, 124 Am. St. Rep. 93. In the latter case Mr. Chief Justice Anderson observed that judgment "could have been rendered against Hayes without a revivor caused by the death of his codefendant, Kel-

ly," citing Garrett v. Lynch, supra, and section 43 of the Code of 1896, which is section 5717 of the Code of 1923. And such is the effect of the two statutes considered together as a part of judicial procedure, and taken in connection with section 5715 of the Code, to the effect that no action abates by death or disability "of the plaintiff or defendant," if the "cause of action survive or continue," and section 5712 of the Code providing that "all actions on contracts, express or implied; all personal actions, except for injuries to the reputation, survive in favor of and against the personal representatives."

In Garrett v. Lynch, 44 Ala. 324, 327, the right to proceed, after the death of one of the defendants, to take judgment by default against the remaining defendants, it is said that this action without a revivor did not amount to a discontinuance·as the result of an unauthorized dismissal, saying of section 5717, Code of 1923 (sections 2546, 2547, of the Revised Code):

"Here the suit could not proceed against the dead defendant, but could only proceed against his representative upon revival. And this revival is optionary with the plaintiff. He has the remedy existing before this statute. He may permit the suit against the dead defendant to abate, and bring a new action against his representative, or he may revive this suit under the statute. The language of the statute is positive and peremptory in giving the right of revival in this case, but it is permissive in requiring the exercise of the right. It expressly declares that the suit 'may be revived against the representatives of the deceased obligor or obligors.' It does not require that this right shall be exercised, and that a failure to do so shall defeat the whole action. We do not think that such a construction can logically be drawn from the language of the act nor from its purpose. Then we can not legitimately conceive it to exist."

■■ Is the rule, or reason therefor, different in suits on official bonds? The official bond of a deputy sheriff constitutes a contract between the officer and his surety, on the one hand, and the state and all persons who may be injured by a violation of such bond, on the other. Fite v. Pearson, 215 Ala. 521, 522, 111 So. 15, and authorities; Deason v. Gray, 192 Ala. 611, 69 So. 15; Id., 189 Ala. 672, 66 So. 646; Code of 1907, § 1500; Code of 1923, § 2612. Though a breach of the bond by an assault and battery by the officer constitutes a tort, the action for damages is upon the contract, and not for the tort. The tort is but evidence of the breach of the contract, and the cause of action for the breach of contract survives the death of the officer. Roberts v. Hunt, 212 Ala. 475, 103 So. 451; Roebuck v. Roberts, 217 Ala. 477, 117 So. 32; Koski v. Pakkala, 121 Minn. 450, 141 N. W. 793, 47 L. R. A. (N. S.) 183; Gates v. Tebbetts, 83 Neb. 573, 119 N. W. 1120, 20 L. R. A. (N. S.) 1000, 17 Ann. Cas. 1183; Morrison v. Citizens' Bank, 65 N. H. 253, 20 A. 300, 9 L. R. A. 282, 23 Am. St. Rep. 39; Bingham v. Mears, 4 N. D. 437, 61 N. W. 808, 27 L. R. A. 257. In the case of Koski v. Pakkala, 121 Minn. 450, 141 N. W. 793, 47 L. R. A. (N. S.) 183, the defendant was a licensed saloon keeper, and had executed, in compliance with the requirements of the statutes of that state, a saloon bond with the Bankers'. Surety Company as surety. He violated, during his lifetime, the condition of the bond by selling to one Drexler some whisky. Suit was instituted against Pakkala and his surety. Pending the trial Pakkala died. His administratrix was substituted as a defendant in his place. Trial resulted in judgment against both defendants, and the defendants contended that the cause of action sounded in tort, and because one of the tort-feasors was dead, the cause of action died with him, and the action could not be maintained. The Supreme Court of Minnesota held that the bond constituted a contract between the licensee and his surety, on the one hand, and the state and all persons injured in consequence of a violation of conditions, on the other, and that an action thereon was an action upon a contract, and to prove it resort must be had to proof of the commission of the tort on the part of the principal in the bond. In this case the Chief Justice said:

"The defendants contend that plaintiff's action sounds in tort, and since the tort-feasor, Pakkala, is dead, the cause of action died with him, and that the action cannot be maintained against his personal representative; and further that, since his estate is not liable, no liability exists against the surety, for the reason that, by the express language of the statute, the surety is liable for the violation of the bond only in cases where the principal is liable. We do not concur in either contention. * * * Though the act of the person who caused the death of plaintiff's intestate in the case at bar was a tort, a crime, the act of Pakkala, the saloon keeper, in causing him, by the unlawful sale of liquor to him, to become intoxicated, thus bringing about a condition on his part which caused the commission of his wrongful act, was a violation of the bond, a breach of the contract; and herein is the basis and foundation of plaintiff's action. * * * The wrongful acts of Pakkala and Drexler do not constitute the foundation of the action, but serve only to prove and establish the breach of the covenants of the bond."

In Roebuck v. Roberts, supra, and Roberts v. Hunt, 212 Ala. 475, 476, 103 So. 451, the lien of the surety was fixed as against the surety, and then against the property of the principal, in the absence of the principal. It was there said, of the nature of the official bond, that it "is obligatory on the principal and sureties thereon, 'for the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by his failure to perform, or the improper or neglectful perform-

ance of those duties imposed by law.' Code 1907, § 1500."

The amendment, by striking the name of Jones as a defendant, presented no issue of surprise or injustice to the remaining defendant, and there was no arbitrary exercise or abuse of power by the trial court in overruling the motion for continuance addressed, as it was, to a sound discretion. Knowles v. Blue, 209 Ala. 27, 30, 95 So. 481; Life & Casualty Co. of Tenn. v. Street, 213 Ala. 588, 105 So. 672. No injustice was done in permitting the amendment of said pleading, and the statute declares that, such being the effect, the amendment must cause no delay in the trial of the cause, unless injustice will thereby be done. Shaw v. Knight, 212 Ala. 356, 102 So. 701; McGee v. Freeman & Son, 212 Ala. 31, 101 So. 644; section 9513, Code of 1923.

The trial was had upon counts as amended Nos. 4, 6, and 7. It is urged there was error in overruling demurrer to counts 4 and 7. The allegation in the counts, averring, as it does, "under color of his said office and within the line and scope of his authority as such deputy sheriff in making said investigation into an alleged violation of the law of the state of Alabama," is consistent under the statute prescribing the duties and liabilities of public officials entering into official bonds. Section 2612, Code of 1923; Mobile County v. Williams, 180 Ala. 639, 61 So. 963. Count 6 in the instant case is practically the same as count A in Burge v. Scarbrough, 211 Ala. 379, 100 So. 653, where the opinion of the majority does not support appellant's insistence. It will be noted that on rehearing is the statement that all the Justices concur, and hold that count A is sufficient and not subject to demurrer of the National Surety Company. The counts declaring for breach of the official bond were not subject to demurrer directed thereto. Deason v. Gray, 189 Ala. 672, 66 So. 646; Coleman v. Roberts, 113 Ala. 323, 21 So. 449, 36 L. R. A. 84, 59 Am. St. Rep. 111; Kelly v. Moore, 51 Ala. 364. The statute (section 2612, Code of 1923) was the departing from the earlier decisions as to liability of sureties for malfeasance of their principal without misfeasance; under it the common-law suit was not predicated on malfeasance alone, as not being within the scope of the obligation. McElhaney v. Gilleland, 30 Ala. 183; Governor v. Hancock, 2 Ala. 728. That is, the statute was required to meet the common-law rule, and distinctions between virtute officii and colore officii, as affecting sureties on such official bond. To hold a deputy and his sureties liable on his bond, it is not necessary that the officer be acting under color of some writ in the possession of that officer at the time, but it is sufficient that he is acting, pretending or professing to do so,

in the premises, under the color of or by virtue of his office, and inducing others interested or affected thereby to believe he is so acting. 2 Words and Phrases, pp. 1263, 1264; Feller v. Gates, 40 Or. 543, 67 P. 416, 56 L. R. A. 630, 91 Am. St. Rep. 492; State v. Fowler, 88 Md. 601, 42 A. 201, 42 L. R. A. 849, 71 Am. St. Rep. 452; Mobile Co. v. Williams, Judge, 180 Ala. 639, 650, 61 So. 963; Union Ind. Co. v. Cunningham (Ala. App.) 114 So. 285;[1] Deason v. Gray, 189 Ala. 672, 66 So. 646; "Color of Office," Bouvier Law Dict.; Black's Law Dict. 222; Burrall v. Acker, 23 Wend. (N. Y.) 606, 35 Am. Dec. 582.

Gen. Acts of 1915, p. 383, touching the liability of deputy sheriffs, as conditions in official bonds require, are the same as the bond of the sheriff, and governed in all respects by the laws of this state relating to official bonds, in so far as the same are applicable. Union Ind. Co. v. Cunningham (Ala. App.) 114 So. 285.[2] It is further provided in said act, for Jefferson county, that the sheriff shall not be liable for the acts of his deputies, unless he participated in such acts, or the same are done in compliance with his orders, or with his knowledge and consent. Gen. Act Sept. 10, 1915, p. 382; Henry, Treas., v. Wiggins, 207 Ala. 251, 92 So. 108. Thus is given the right of suit in a proper case on the official bond of the deputy sheriff, without joining the sheriff as a party defendant. The deputy sheriff was an officer making the arrest for the statutory felony of operating a still. Ward v. State, 203 Ala. 306, 82 So. 662.

The general authorities on the subject of liability of sureties on official bonds for illegal arrests, abuse of the right of arrest, or that of the abuse of process, are found in the notes to Lee v. Charmley, 33 L. R. A. (N. S.) 275 et seq. The right of arrest without a warrant for felony comes to us from the common law, as extended by our statute. In 3 Coke's Institutes of the Laws of England, c. 101, p. 220, Sir Edward Coke said:

"But it was no question at the common law, that if a robbery, murder, burglary, or other felony was done, and pursuit made after the offender, who either by resistence or flight could not be apprehended without killing of him by inevitable necessity, the party so pursuing and killing should not forfeit his goods or chattels; for in those cases every man may arrest the felon by a warrant in law. But there is a diversity between a warrant in deed, and a warrant in law, in this, that if a man be indicted of murder, robbery, burglary, or other felony, and the sheriff by virtue of a capias offers to arrest him, and he resists (resisteth) and fly (flye), ut supra, the sheriff may kill him, if otherwise he cannot arrest him, although in truth the party be not guilty, nor any felony done.

[1] 22 Ala. App. 226.
[2] 22 Ala. App. 226.

But in the case of the abovesaid warrant in law, there must be a felony done, and this diversity appears (appeareth) in our books. And so it is, if after arrest for felony the party arrested resists (resisteth) or flys (flyeth), and in pursuit is slain by inevitable necessity, they so killing him forfeit nothing."

This subject has been dealt with by our statute since the Code of 1867, § 3994. In section 3261, Code of 1923, the peace officers named are given the right to make an arrest "under a warrant, or without a warrant," as thereinafter provided. Under section 3262, Code, arrest may be made by an officer under warrant; it prescribes when and how made; he must inform the defendant of his authority, and, if required, must show the warrant, and if thereafter there is refusal of admittance after notice of authority and purpose, may break an "outer or inner door or window of a dwelling house, in order to make the arrest." In section 3263, Code of 1923, it is further provided:

"3263—(1907—6269) (1896—5211) (1886—4262) (1876—4664) (1867—3994) (1852—445) —Arrest by officer without warrant; when and for what allowed.—An officer may also arrest any person, without warrant, on any day and at any time, (1) for any *public offense* committed, or a breach of the peace threatened in his presence; or (2) when *a felony* has been committed, though not in his presence, by the person arrested, or (3) when *a felony* has been committed, and he has *reasonable cause to believe* that the person arrested committed it; or (4) when he has *reasonable cause to believe* that the person arrested has committed *a felony*, although it may afterwards appear that *a felony had not in fact been committed;* or (5) on a charge made, upon *reasonable cause,* that the person arrested has committed *a felony."*

We supply the italics and numerals for the purpose of ready reference merely. The words "reasonable cause to believe" are applied to the "person arrested (as having) committed" the felony, and as well to when the officer "has reasonable cause to believe that the person arrested has committed a felony," although it may later "appear that a felony has not in fact been committed."

In Orr v. Burleson, 214 Ala. 257, 107 So. 825, by Mr. Justice Sayre, the provisions of the statute, section 3263, Code of 1923, coming unchanged from the earlier Codes, were adverted to—that an officer may arrest without a warrant at any time "when a felony has been committed," and the officer has "reasonable cause to believe that the person arrested committed it," or when he "has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed," or he may arrest "on a charge made, upon reasonable cause, that the person arrested has committed a felony." To the same effect is Tolleson v. Jackson, 217 Ala. 66, 114 So. 801. These cases were of statutory felonies. See, also, Rich v. McInerny, 103 Ala. 345, 15 So. 663, 49 Am. St. Rep. 32.

We have learned, from the cases touching the right of arrest without a warrant, that the terms employed in the statute, "reasonable cause to believe" that the person arrested committed the felony is of like import to "probable cause" as a term employed in malicious prosecutions. It is defined to be a state of facts or circumstances as would lead a reasonable man of ordinary caution, acting impartially, reasonably, and without prejudice to conscientiously believe the person accused to be guilty. Parisian Co. v. Williams, 203 Ala. 378, 83 So. 122; Boshell v. Cunningham, 200 Ala. 579, 76 So. 937; Gulsby v. L. & N. R. Co., 167 Ala. 122, 52 So. 392; Hanchey v. Brunson, 175 Ala. 236, 56 So. 971, Ann. Cas. 1914C, 804; Jordan v. A. G. S. R. Co., 81 Ala. 220, 8 So. 191; Rich v. McInerny, 103 Ala. 345, 15 So. 663, 49 Am. St. Rep. 32; Amer. Express Co. v. Summers, 208 Ala. 531, 94 So. 737; Piggly-Wiggly Ala. Co. v. Rickles, 212 Ala. 585, 103 So. 860.

From such analogy the expression in section 3263 of the Code, "reasonable cause to believe," touching the right to arrest without a warrant, meant such a state of facts in the mind of the actor or officer making the arrest as would lead a man of ordinary prudence to believe (induced to that belief on reasonable grounds) that a felony has been committed, and that the person arrested or to be arrested is guilty thereof. Such being the fact, or the state of mind of a bona fide well-founded belief of the felony committed, and that the party arrested is guilty, a lawful arrest of such person believed to be guilty may be made without a warrant. Tolleson v. Jackson, 217 Ala. 66, 114 So. 801; Orr v. Burleson, 214 Ala. 257, 107 So. 825.

The extent to which the officer or actor may go in the arrest without a warrant, and the force that may be employed in such arrest or apprehension of a resisting or fleeing felon, or of one so arrested upon probable cause, upon reasonable ground believed (Tolleson v. Jackson, supra) by the officer, as being guilty of committing felony, has been considered by the courts. And it is generally established:

(1) That the reasonableness of the force or means employed in such arrest is a question of fact for each case, to be adjudged by the conduct of an ordinarily careful and prudent man under like and existing circumstances; the reasonableness of the grounds for belief and inducing the belief that the party arrested is guilty of a felony, upon which the officer or de facto officer acted in the premises, and the necessity or excessiveness of the act of such person or force or means employed in making or attempting to arrest in felony, are ordinarily

facts for the careful consideration of a jury. Patterson v. State, 91 Ala. 58, 8 So. 756; Ex parte Warsham, 203 Ala. 534, 84 So. 889; Richards v. Burgin, 159 Ala. 282, 49 So. 294, 17 Ann. Cas. 898; Hammond v. State, 147 Ala. 79, 41 So. 761; 5 C. J. 425, § 59.

(2) In arresting, or attempting to arrest, for felony without a warrant, such peace office or private person may, *if it is necessary* (not merely reasonably necessary), kill the fleeing or resisting felon, provided he cannot be otherwise taken. It is the duty of the peace officer to effect such arrest (2 R. C. L. 446 et seq.; 8 L. R. A. 530, note) and to this end may reasonably become the aggressor as to such felon, and use such force or means as may be required under the circumstances to overcome the resistance, not to employ unnecessary or improper violence as means, or to use force or violence or means disproportionate to the nature and extent of the resistance offered. In this the officer or actor is to be guided by the reasonable appearances of the time and circumstances of making the arrest and the facts and nature of the particular case. Com. v. Phelps, 209 Mass. 396, 95 N. E. 868, Ann. Cas. 1912B, 566; Richards v. Burgin, 159 Ala. 282, 287, 49 So. 294, 17 Ann. Cas. 898; Suell v. Derricott, 161 Ala. 259, 270, 273, 274, 49 So. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; Birt v. State, 156 Ala. 29, 37, 46 So. 858; Dougherty v. State, 106 Ala. 63, 17 So. 393; Holland v. State, 162 Ala. 5, 50 So. 215; Hammond v. State, 147 Ala. 79, 41 So. 761; Clements v. State, 50 Ala. 117; Williams v. State, 44 Ala. 41. See 1 Bishop's Crim. Law, § 507; 5 C. J. 425, § 59; 3 A. L. R. 1176; 2 R. C. A. p. 470 et seq. In State v. Dierberger, 96 Mo. 666, 10 S. W. 168, 9 Am. St. Rep. page 383, the common-law authorities are cited; East, P. C. 302; 1 Russell on Crimes (19th Am. Ed.) 892; Wharton on Crim. Law (8th Ed.) § 402; Bishop on Crim. Law, § 642; 3 Coke's Inst. of the Law of Eng. c. 101, p. 220.

(3) When one is killed or injured under circumstances which may amount to a legal justification for that act by the officer or person arresting the felon, or such person as may be arrested within the purview and justification of the statutes (sections 3262, 3263, Code), and there is legal action founded thereon against the officer or arresting actor, the burden of going forward with the evidence is upon the defendant actor, to the extent of showing his authority and probable cause in the premises, and such as that it overcame the prima facie presumption for the protection of human life and to guard against physical injury which may arise from the act of homicide or maiming unlawfully. 2 R. C. L. 472, § 29. Such is the rule, unless the circumstances of the killing or physical injury by the officer rebut the presumption. See State v. Dierberger, 96 Mo. 666, 10 S. W. 168, 9 Am. St. Rep. 380.

And after a careful examination of our decisions, it is the opinion of the writer that under the statutes (section 3263, Code of 1923; section 6269, Code of 1907; section 5211, Code of 1896) the authorities have made no distinction between felonies as they were classified under the common law and felonies made so by virtue of our statute, as affecting the officer's right of arrest without a warrant. In Orr v. Burleson, 214 Ala. 257, 259, 107 So. 825, the arrest had been made without warrant on a charge of exploding dynamite under a passenger car, a statutory felony (section 3886, Code; Acts 1920, p. 163); Tolleson v. Jackson, 217 Ala. 66, 114 So. 801, receiving stolen property as a substantive offense is a creation of the statute; 3 Mod. Amer. Law, p. 208; Suell v. Derricott, 161 Ala. 259, 264, 49 So. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636, an attempt to break into a storehouse; Dougherty v. State, 106 Ala. 63, 17 So. 393, larceny from a railroad car (section 4905, Code; Acts 1911, p. 92, § 1); Hammond v. State, 147 Ala. 79, 41 So. 761, the deceased was carrying a concealed pistol and that fact was observed by an officer; Clements v. State, 50 Ala. 117, resisting the execution of a search warrant. The subject of arrest without warrant was reviewed at length in Ex parte Rhodes, 202 Ala. 68, 79 So. 462, 1 A. L. R. 568.

This record does not present a case of injury in arresting without warrant on suspicion of a felony. It is when the plaintiff in this civil action for his damage came to his injury while the statutory felony was being committed in the presence of the officer—the still was in operation—and plaintiff was the only person seen by the officers thereat, or seen by them to be fleeing therefrom, and, when he was sought to be arrested, he did not stop when warned by shots, was then fired upon, and injured. He immediately admitted his operation of the still, so the state's officers testified, and upbraided the officers for firing upon him as he ran. As to this the defendant denied his participation in operation or ownership of the still; admitted there was such a still being operated, but denied that he set it in operation; that as he ran he received his injury, about 50 or 75 yards from the still; that there was no one running with him when he was shot; that he saw other parties run before him, and as plaintiff ran was shot by the officer, after several preliminary warnings or ineffectual shots were made.

In the state of the record as to reasonable and conflicting tendencies of evidence (McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135), we are of opinion the questions of reasonable necessity for action as and when taken by the officer, and the force necessarily to be resorted to and employed by the officers in apprehending the fleeing felon, were questions for the jury.

478

■ There was no insistence of an involuntary confession by plaintiff as to his ownership or participation in the operation of the still. The writer is therefore of opinion that the cross-examination of Clint Cole, as to how many officers were standing around with guns when the witness heard the plaintiff make declarations or statements against interest detailed by Cole, was beside the issues and constituted reversible error. Such a cross-examination tended to inflame the jury against the defendant surety company being sued on Jones' official bond, and against the witness, and tended to evoke sympathy for the plaintiff. McGill v. Varin, 213 Ala. 649, 652, 106 So. 44. It tended to show no animus on the part of the witness being cross-examined. The majority of the court are of opinion that no reversible error was committed, in that cross-examination, in thus giving the circumstances of the confession to the jury.

■■ In malicious prosecution the general rule is that the *finding of an indictment* by a grand jury against one charged with crime is prima facie evidence of the existence of probable cause, and that the acquittal of a defendant upon the trial does not tend to show a want of probable cause for believing him guilty of the offense charged when the arrest is made or prosecution initiated. Such differing results are rested upon the fact that an acquittal is based upon any reasonable doubt of the defendant's guilt on all. the evidence. Standard Oil Co. v. Davis, 208 Ala. 565, 94 So. 754; Fowlkes v. Lewis, 10 Ala. App. 543, 65 So. 724. The case of Motes v. Bates, 80 Ala. 382, cited by appellee, has not been followed in this jurisdiction on the question under consideration; that is to say, that the finding of indictment by the grand jury against a party accused of crime, by the weight of authority, is put on the same basis as that of the binding over by a committing magistrate of a defendant, and held not conclusive of the existence of probable cause, but that such action was prima facie evidence of its existence in malicious prosecution (18 R. C. L. p. 42, § 25, and page 44, § 26; Newell's Mal. Pros. 290; 38 C. J. p. 411, § 45, and page 412, § 47; 2 Greenleaf on Ev. § 435, pp. 435, 436; 13 Enc. Pl. & Pr. 458), and in false imprisonment or false arrest (11 R. C. L. p. 824, § 39; 25 C. J. p. 546, § 154, and page 548, § 156).

The same prima facie rule has been applied in this court, without distinction, in malicious prosecution (Ewing v. Sanford, 19 Ala. 605, where the judgment of committal was before the committing magistrate held prima facie evidence of probable cause; Veid v. Roberts, 200 Ala. 576, 76 So. 934; Hanchey v. Brunson, 175 Ala. 236, 245, 246, 56 So. 971, Ann. Cas. 1914C, 804; Sandlin v. Anders, 187 Ala. 473, 479, 65 So. 376; Ex parte Kemp, 202 Ala. 425, 80 So. 809; Lunsford v. Dietrich, 93 Ala. 565–570, 9 So. 308, 30 Am. St. Rep.

79. See O'Neal v. McKinna, 116 Ala. 606, 22 So. 905, and Rich v. McInerny, 103 Ala. 345, 15 So. 663, 49 Am. St. Rep. 32) · for false arrest or imprisonment (Piggly-Wiggly Case, 212 Ala. 585, 586, 103 So. 860, citing with approval Ewing v. Sanford, supra, that the conviction in the recorder's court made out a prima facie case of probable cause for the defendant, and Standard Oil Co. v. Davis, 208 Ala. 565, 568, 94 So. 754 · Sandlin v. Anders, 187 Ala. 473, 479, 65 So. 376). See O'Neal v. McKinna, 116 Ala. 606, 22 So. 905, and Rich v. McInerny, 103 Ala. 345, 15 So. 663, 49 Am. St. Rep. 32.

■ The evidence of Brandon, and the other evidence shedding light upon probable cause of felony causing the arrest of Webster, made relevant the indictment for the felony committed in operating the still, as prima facie probative and corroborative of the other evidence inducing the reasonable belief in the mind of the officer, Jones, that Webster had been caught in the act of committing the felony and was fleeing from the scene of his crime when he was injured. The action of the trial court in excluding the evidence of Brandon, and that of the indictment of the grand jury for the felony, was error to reverse, in the opinion of the writer; the other Justices believe such evidence was properly excluded in the instant suit.

■■ When the oral charge is considered as a whole, and as related to the portion thereof to which exception was taken, there was no error of which the defendant may complain. If there was any criticism of the charge, it was that it was too favorable to defendant in the use of the word "reasonably" as a qualification of the word "necessary." The rule in this behalf is stated in Richards v. Burgin, 159 Ala. 282, 286, 287, 49 So. 294, 295 (17 Ann. Cas. 898), as follows:

"* * * It is undoubtedly true that an officer, in lawful pursuit of a felon, is allowed to kill, if to do so is necessary to prevent his escape by flight. 1 East's C. L. 300; 4 Black. Co. 180; 2 Bishop on Cr. Law, § 648; 3 Cyc. 891; 2 Am. & Eng. Ency. Law, 848; Story's Case, 71 Ala. 329; Williams' Case, 44 Ala. 41; Phillip's Case, 119 Iowa, 652, 94 N. W. 229, 67 L. R. A. 292; Brown v. Weaver, 76 Miss. 7, 23 So. 388, 42 L. R. A. 423, 71 Am. St. Rep. 512; United States v. Clark (C. C.) 31 F. 710. * * * But it is a salutary principle of law, and one in keeping with humanity, that, to afford warrant for resort to such measures, 'the attendant circumstances must be such as would justify a jury in the conclusion that they were necessary in order to prevent the felon from escaping—not that such measures were only reasonably necessary. This is in harmony and line with the ruling made in the well-considered case of United States v. Clark, supra. See, also, Jackson's Case, 66 Miss. 95, 5 So. 690, 14 Am. St. Rep. 542; Brown v. Weaver, supra; Williams' Case, supra." Dougherty v. State, 106 Ala. 63 [17 So. 393]; Storey v. State, 71 Ala. 329, 339.

In Suell v. Derricott, 161 Ala. 259 270, 49 So. 895, 900 (23 L. R. A. N S.) 996, 18 Ann. Cas. 636), it is said:

"As to the right to kill in making arrests or to prevent an escape, the rule may be stated as follows: 'Generally when one refuses to submit to arrest after he has been touched by the officer, or endeavors to break away after the arrest is effected, he may be lawfully killed, provided this extreme measure is necessary. In cases of felony the killing is justifiable before an actual arrest is made, where in no other way the escaping felon can be taken. In cases of felony, if the felon flee from justice, it is the duty of every man to use his best endeavor to prevent an escape, and if in the pursuit the felon be killed, where he cannot be otherwise overtaken, the homicide is justifiable, but if he may be taken in any case without such severity, it is at least manslaughter in him who kills him, and the jury ought to inquire whether it was done of necessity or not.' "

And in Patterson v. State, 91 Ala. 58, 8 So. 756, Mr. Chief Justice Stone declared of the act of the arresting official:

"If, in the performance of this public duty, it reasonably appeared to be necessary to inflict the blow to overcome Stephens, disarm him, and thus place it out of his power to injure or kill some other person; then the law, which only voices reason, authorized the officer to employ such force as was necessary to accomplish the end, even if in doing so he struck the defendant. In other words, if to a reasonable mind it appeared necessary to use violence in order to accomplish the object with safety to the arresting officer, then the officer violated no law in using the baton. On the other hand, if to a reasonable mind it did not appear necessary to the officer's discharge of this public duty with safety to himself, or some other person who might be aiding him, that he should strike Stephens, then the blow he struck was unauthorized, and he was guilty of an assault and battery. Whether, under these rules, the officer was justified in striking Stephens, was a question for the jury."

There was no error in the oral charge to which exception was taken, and of which defendant can complain.

In the refusal of defendant's charge No. 37, assigned as error, is sought to be presented to the court the issue of probable cause, if the facts are undisputed facts. It is true that the still was in operation and located in a secluded section of the county, on a branch in or near the bend of the river. The plaintiff was the only person seen near thereto, and as he fled down a hollow and through the woods, from the direction of the still, was shot within 50 or 75 yards therefrom. He had been seen by Cole going away alone from the still in operation. We are not informed that Jones saw him so close to the still. The plaintiff thus described the locus in quo:

"There were hills on both sides of the hollow. The hollow is very narrow, not 50 yards wide. The still was located way back upon the hill about a mile from the river and about a mile from the public highway, in the woods. When I was shot I was about 50 or 75 yards from where they cut up the still. * * *

"I was running; I was not running till he fired the first shot; when he come running off of there I started to run; he come running from that still. There was a still there. * * *

"The still was up on the hill from the hollow and I was about 50 or 75 yards from it and I was running after the first shot. There was no one running with me, a fellow had done run down there by me but I don't know who they were; they might have been officers, I don't know; I did not recognize any of them afterwards. Two or three run by me when I was walking fast; they were running over the hill there in the same direction I started to go after they started shooting. Jones was not coming from the hollow, he was coming from the opposite direction and I run toward the hollow. I run about 15 feet when I was shot. I left the Glover boys down there at the river about 1 or 1:15; I had started to my brother's; I had no fish with me."

In the case of Molton Realty Co. v. Murchison, 212 Ala. 561, 103 So. 651, this court recently observed:

"What facts and whether particular facts amount to probable cause is a question of law, but what facts and whether particular facts exist, in a case in which the evidence as to the facts or any necessary particular fact is in dispute, is a question for the jury."

This is the stated rule in Molton Realty Co. v. Murchison, supra, on the authority of Ewing v. Sanford, 19 Ala. 605; McLeod v. McLeod, 75 Ala. 483; Gulsby v. L. & N. R. Co., 167 Ala. 129, 52 So. 392; Am. Ry. Ex. Co. v. Summers, 208 Ala. 531, 533, 94 So. 737.

Mr. Justice Sayre was the author of the opinion in the Murchison Case and that of Piggly-Wiggly Co. v. Rickles, 212 Ala. 585, 103 So. 860, and the refusal of the affirmative charge was justified on the conflicting tendencies of the evidence as to what in fact occurred as a basis for the preferment of charges of larceny, and held to necessitate submission to the jury the issues of probable cause. McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135. We cannot say, from the evidence and the frequent references of witnesses to the diagram before the court (Fayet v. St. Louis & S. F. R. Co., 203 Ala. 3, 81 So. 671; Godfrey v. Vinson, 215 Ala. 166, 110 So. 13; Jefferson v. Republic Iron Co., 208 Ala. 143, 93 So. 890), in the absence of evidence of the exact location of Deputy Jones, and of his observations of complainant, and his relation to the still, and as Webster fled from the immediate vicinity of that still was shot by Jones, that the affirmative instruction requested should have been given. Plaintiff testified that he had come from the river and started to the road in the direction of his brother's; he had not been to the still, and that some other person ran down there by

480

him and then the shooting started and he was injured.

 Refused charge 27 was the statement of the burden of proof being upon plaintiff to establish the material allegations of the count that contained, among other averments, that the assault and battery on plaintiff was committed by Jones, a deputy sheriff, shooting him unlawfully. The charge, whether good or bad, was fully and fairly covered by the oral charge, and where the expression of the charge, shooting by a deputy sheriff "was unlawful," was fully explained to the jury.

 Charge 32 was justified in its refusal by the use of the word "reasonably" (Richards v. Burgin, 159 Ala. 286, 287, 49 So. 294, 17 Ann. Cas. 898), and the words "solemn · duty," as giving undue prominence to particular phases of the evidence (Nixon v. Sampson, 215 Ala. 368, 110 So. 700; Miller v. Whittington, 202 Ala. 406, 80 So. 499). Besides this, the jury were properly instructed on the law under the issue in given charges 10 and 12, and in the oral charge.

Refused charge 29 did not fail to hypothesize the finding of fact upon the jury's belief of the evidence. The language employed being, "If the plaintiff was so engaged," following the statement:

"I charge you that it is your duty under your oaths to look to all the facts and circumstances in evidence in this case in determining whether or not the plaintiff at the time and place in evidence was engaged in the manufacture of whisky, either by himself or with others; I further charge you that such manufacture is prohibited by the law, both of the state and the United States, and is a felony in Alabama."

In the opinion of the writer, it was in accord with the rule of conduct declared of the officer and actor in Richards v. Burgin, supra, in the use of the words "available means" to prevent his escape or effect his capture; was predicated upon belief ·of the evidence under all the facts and circumstances thereof; and, when so considered, the expression, "no other *available means*" to be employed by the officers than were employed (shooting the fleeing felon in the leg) to effectuate his arrest, or to prevent his effort to escape arrest, was according to the rule that the "attendant circumstances must be such as would justify a jury in the conclusion that they [the means employed by the actor or officer] were necessary in order to prevent the felon from escaping." If the charge was proper (which is not decided), its refusal was rendered innocuous by reason of the instructions given in the oral charge and given charge 10, sufficiently instructing the jury of the matters contained in refused charge 29.

Refused charge 21 was covered by given charges 20 and 22. Refused charge 14 was covered in given charge 15.

We have indicated that it was for the jury to say, from all the evidence, whether or not the officer used more or different force and agency than was necessary to arrest plaintiff, in the absence of the diagrams used on the trial. It is not indicated that plaintiff was running to or toward some of the officers, nor that any officer made another effort to overtake the plaintiff, nor that Jones commanded the plaintiff to halt before he fired the shot causing injury. There was no error in refusing affirmative . instructions requested,· and there was no error in overruling the motion for a new trial.

The judgment of the circuit court is affirmed.

ANDERSON, C. J., and SAYRE, GARDNER, BOULDIN, and FOSTER, JJ., concur.

BROWN, J. I concur in the affirmance of the judgment of the circuit court, though I am not in agreement with so much of the opinion as holds that an officer attempting to make an arrest of one not resisting, but fleeing, may shoot to kill or maim on mere well-grounded suspicion that the person so fleeing is a felon. The law which gives an officer the right to kill an escaping felon limits the right to cases in which the officer has a warrant, or actually knows the person whom he is seeking to arrest is a felon, at the time he fires. 2 R. C. L. p. 472, § 29; West v. State (Ala. App.) 114 So. 568;[1] Id., 217 Ala. 62, 114 So. 570; Johnson v. Williams, Adm'r, 111 Ky. 289, 63 S. W. 759; 54 L. R. A. 220, 98 Am. St. Rep. 416; 17 Ann. Cas. 900, note; 67 L. R. A. 310, note.

